W. A. WATSON and KATE MATHIS v. STATE.

194 So. 640

Division B

Opinion Filed March 8, 1940

Rehearing Denied April 1, 1940

*Mulkey & Mulkey,* of Geneva, Alabama, and *Whitfield & Whitfield* of Tallahassee, Florida, for Plaintiffs in Error;

*George Couper Gibbs,* Attorney General, and *T. J. Ellis,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—The record in this case discloses that W. A. Watson and Kate Mathis were informed against in two counts by the State Attorney of Okaloosa County, Florida, on the 26th day of April, 1938, and the second count, on which plaintiffs in error were convicted, charged that they, not then and there being married to each other, did unlawfully live in an open state of adultery, the said W. A. Watson then and there being married, and the unlawful cohabitation is alleged to have occurred within two years prior to January 1, 1938, in Okaloosa County, Florida. The defendants below were placed upon trial and convicted under the second count of the information and by the trial court each was sentenced to serve a period of two years at

hard labor in the State Penitentiary. From this judgment of conviction a writ of error has been taken to this Court and several assignments of error argued for a reversal.

The second count of the information is drawn under Section 7549 C. G. L., viz.:

"Whoever lives in an open state of adultery shall be punished by imprisonment in the State prison not exceeding two years, or in the county jail not exceeding one year, or by fine not exceeding five hundred dollars. Where either of the parties living in an open state of adultery is married, both parties so living shall be deemed to be guilty of the offense provided for in this section."

This Court has, from time to time, construed the statute, *supra,* and has consistently held that the burden is on the State to show that the parties lived together openly as if the relation of husband and wife existed. A mere occasional illicit intercourse is not sufficient to meet the requirements of the statute, but it must be shown that there was a living or residing together openly, as if the conjugal relation existed. See Langford v. State, 124 Fla. 428, 168 So. 528; Campbell v. State, 92 Fla. 775, 109 So. 809; Gordon v. State, 86 Fla. 255, 97 So. 428; Lockhart v. State, 79 Fla. 824, 85 So. 153; Whitfield v. State, 85 Fla. 142, 95 So. 430; Alford v. State, 76 Fla. 122, 79 So. 437; Cloud v. State, 64 Fla. 237, 60 So. 180; Thomas v. State, 39 Fla. 437, 22 So. 725; Luster v. State, 23 Fla. 339, 2 So. 690; Brevaldo v. State, 21 Fla. 789.

The record shows that W. A. Watson had a home near Geneva, Alabama. His second wife was then suffering with pulmonary tuberculosis in an advanced stage. He was financially able to take care of his wife and pay all costs incident to her illness, and it was her desire that her husband not expose himself to the disease by attending her,

but withdraw from the home and go elsewhere so that he would not contract the dreadful disease. Pursuant to this suggestion, Watson left his home near Geneva and enroute to Port St. Poe, Florida, learned at Crestview of an opportunity to go into business, and there met Kate Mathis, a widow, and mother of a boy some 8 or 10 years of age who was living with her.

The parties operated a small grocery business on the highway near Crestview for some two or three years, as alleged in the information. Living quarters were maintained at the place of business. The house contained three bedrooms and each occupied respectively by Kate Mathis, Watson and the son. The laundry was sent out in one lot and separated when returned. Watson gave his time to the business and Kate Mathis assisted. Dancing parties were held at the place in which plaintiffs in error participated. It was understood by those acquainted with the place that the three persons lived in the building, but whether or not plaintiffs in error roomed together was not generally known.

One of the witnesses who had been employed at the place testified that she had seen Watson and Kate Mathis in the same bed. Another testified to the effect that she saw Watson sitting on the bed where Kate Mathis was confined, suffering from a broken pelvis bone and at the time she was in a plaster cast. While the record fails to disclose the age of Kate Mathis, we infer from our study thereof that she was younger than Watson, who at the time was 45.

The defendants during the progress of the trial offered a number of witnesses who had, from time to time, been around the business and none of these witnesses saw or observed conduct of impropriety on the part of the defendants. While we cannot overlook the minimum legal

requirement to be fully established by the State in cases of this nature, the fact remains that because of the very nature of the accusation the inclination on the part of those involved to conceal and to cover up their guilty actions, it is often difficult to meet the *quantum* of proof to sustain a conviction. The policy of the law is to permit evidence of circumstances, the conduct, attitude or improprieties of the parties that would throw any light upon the issues.

While it is true that the evidence offered on the part of the State to establish illicit intercourse on the part of the defendants named in the information is none too strong, the jury charged with the responsibility of deciding this controversial issue, no doubt, drew upon their knowledge and information of human experiences and of the conduct of men and women. It was within the province of the jury to say, from the evidence that where a man and woman had for two years lived in adjoining rooms under the same roof, conducted a grocery store as partners, each placing orders· for groceries, rode around in the community in an automobile, danced with each other at parties, the man found sitting on the bed of the woman in her room, testimony of a witness that she had seen them in the same bed, and one of the parties being less than 45 years of age, whether or not they had had intercourse. It does appear reasonable to assume that from these facts the jury would be justified in finding that the parties had: (a) the ability; (b) the opportunity; and (c) the inclination, and when these three uncontroverted facts appear, as shown by the record, it is safe to conclude that the parties had intercourse, i. e., when the ability, opportunity and inclination of the parties is by the evidence fully established, it may be assumed as a matter of law that the act has been accomplished.

It is next contended that the plaintiffs in error have been

denied the right of a fair and impartial trial as guaranteed by the Constitution because they were not aided or assisted by counsel when tried in the lower court. While it is true that the help or assistance of able and resourceful counsel during the progress of trial cannot be questioned, this Court is without power to reverse a case because the defendants in a criminal case were not represented by counsel and for that reason failed to obtain a fair trial. The Legislature of Florida, by the enactment of Section 8375 C. G. L., restricts the power of the courts to appoint counsel for indigent defendants at public expense to capital cases. The case at bar is not a capital case and therefore no duty rested on the lower court to supply counsel for plaintiffs in error at public expense.

It is next contended that certain evidence adduced during the progress of the trial was prejudicial to the cause of plaintiffs in error. We have examined the questioned evidence, and while there may exist some merit in the assignment, we do not think the evidence so admitted was of such damaging effect as went to the merits of the controversy in such a way as would justify this Court in setting aside the verdict and granting a new trial.

After reviewing the entire record in the case at bar, studying the briefs and examining the authorities cited, the conclusion is irresistible that the disputes and conflicts in the testimony are questions of fact to be decided by the jury under appropriate instructions from the trial court. There exists in law as 'in equity a presumption of the correctness of the rulings of the trial court and a person resorting to an appellate court is charged with the responsibility of making error clearly to appear. That burden has not been met and discharged by counsel for plaintiffs in error.

The question here being, could the jury, acting as reasonable men, from the evidence adduced have found such a verdict, we state unhesitatingly that there is sufficient evidence in the record to support the verdict as found by the jury. We fail to find reversible error in this record.

The judgment appealed from is hereby affirmed.

TERRELL, C. J., and BUFORD and THOMAS, J. J., concur.

WHITFIELD and BROWN, J. J., dissent.

BROWN, J. (disenting).—These parties were placed on trial three days after the information was filed. They had no counsel to represent them. I think there was some illegal and irrelevant testimony adduced by the State (in perfect good faith I am sure), which no doubt prejudiced the jury against the defendant Watson, as well as his co-defendant. After reading the record carefully, I feel that these plaintiffs in error should have a new trial.

WHITFIELD, P. J., concurs.