WADE v. MAYO, STATE PRISON CUSTODIAN.

No. 40. Submitted October 13, 1947.—Resubmitted March 9, 1948.—Decided June 14, 1948.

*E. M. Baynes* submitted on briefs for petitioner.

*J. Tom Watson,* Attorney General of Florida, and *Sumter Leitner,* Assistant Attorney General, submitted on briefs for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This case centers on two issues: (1) whether it was proper for a federal district court to entertain a *habeas corpus* petition filed by a state prisoner who, having secured a ruling from the highest state court on his fed-

eral constitutional claim, had failed to seek a writ of certiorari in this Court; (2) whether the federal district court correctly held that the prisoner had been deprived of his constitutional right to counsel at the trial for a non-capital state offense.

On February 19, 1945, petitioner Wade was arrested in Palm Beach County, Florida, upon the charge of breaking and entering. He was held in jail until brought to trial before a jury on March 14, 1945, in the Criminal Court of Record of Palm Beach County. Just before the trial started, he asked the trial judge to appoint counsel to represent him, claiming that it was financially impossible to employ one himself. The judge refused the request and the trial proceeded. The jury returned a verdict of guilty on the same day and Wade was immediately sentenced to serve five years in the state penitentiary.

Wade then obtained the aid of counsel. On March 16, two days after the trial and conviction, this counsel filed a petition for a writ of *habeas corpus* in the Circuit Court of Palm Beach County. The petition claimed that the refusal of the judge to appoint counsel for Wade at the trial was a denial of the due process of law guaranteed to him by the Fourteenth Amendment to the Constitution of the United States. The writ was issued, a hearing was had, and the Circuit Court thereupon granted the motion of the state's attorney to quash the writ. This action was taken on the authority of two decisions of the Supreme Court of Florida holding that under Florida law a trial court has no duty to appoint counsel to represent the accused in a non-capital case. *Watson* v. *State,* 142 Fla. 218, 194 So. 640; *Johnson* v. *State,* 148 Fla. 510, 4 So. 2d 671.

Wade's counsel appealed the decision of the Circuit Court to the Supreme Court of Florida. In the latter court, the state's Attorney General filed a motion to dis-

miss the appeal as frivolous. Two points were emphasized in this motion: (1) Wade had not appealed from his conviction or even filed a motion for a new trial; (2) the Circuit Court had quashed the *habeas corpus* writ on the authority of the two cases cited in its order. The Supreme Court, upon consideration of this motion, granted the motion and dismissed the appeal. No written opinion was filed and no indication was given whether the appeal was dismissed for one or both of the reasons advanced by the Attorney General. The date of this action was May 14, 1945. No attempt was made to secure a writ of certiorari from this Court.

Nearly a year later, on May 8, 1946, a petition for a writ of *habeas corpus* was filed in the United States District Court for the Southern District of Florida. This petition alleged that the refusal to appoint counsel for Wade at the trial deprived him of his constitutional right to due process of law. And the petition further stated that this point had not been raised by way of appeal from the conviction because of the belief that the *Watson* and *Johnson* cases made it plain that the Supreme Court of Florida "has no power of reversal of a conviction because defendants were not represented by counsel, and for that reason failed to obtain a fair trial, except in capital cases, and this case is not a capital case." Such was the reason given for the belief that an appeal would have been useless and of no avail. But the petition pointed out that in order to exhaust all his remedies in the state courts before applying to a federal court, Wade had pursued a writ of *habeas corpus* all the way through the Florida courts.

The District Court granted the writ and a hearing was held on May 17, 1946. Both Wade and the trial judge testified as to the events surrounding the refusal to appoint counsel. After hearing this testimony and the argument of counsel, the District Court concluded that

under the circumstances the denial of Wade's request was contrary to the due process guaranteed by the Fourteenth Amendment, thereby rendering void the judgment and commitment under which Wade was held. But the Fifth Circuit Court of Appeals reversed, holding that the Fourteenth Amendment did not require the appointment of counsel in non-capital state cases unless the state law so required. 158 F. 2d 614.

We then granted certiorari. After the case had been submitted to us on briefs, we ordered the case restored to the docket for reargument on two points: "(1) the propriety of the exercise of jurisdiction by the District Court in this case when it appears of record, in the state's motion for dismissal of the appeal on *habeas corpus,* that petitioner had not availed himself of the remedy of appeal from his conviction, apparently open after trial though now barred by limitation . . . (2) whether the failure of Florida to make this objection in this proceeding affects the above problem."

In our view, it was proper for the District Court to entertain Wade's petition for a writ of *habeas corpus* and to proceed to a determination of the merits of Wade's constitutional claim. The crucial point is that Wade has exhausted one of the two alternative routes open in the Florida courts for securing an answer to his constitutional objection. It now appears that a defendant who is denied counsel in a non-capital case in Florida may attack the constitutionality of such treatment either by the direct method of an appeal from the conviction or by the collateral method of *habeas corpus.* Since Wade chose the latter alternative and pursued it through to the Supreme Court of Florida, he has done all that could be done to secure a determination of his claim by the Florida courts. The fact that he might have appealed his conviction and made the same claim and received the same answer does not detract from the completeness with which

Florida has disposed of his claim on *habeas corpus*. The exhaustion of but one of several available alternatives is all that is necessary.

At the time the Supreme Court of Florida dismissed Wade's *habeas corpus* appeal, however, the propriety of the *habeas corpus* method of raising the right of counsel issue was anything but clear. The failure of that court to specify the reason for the dismissal made it possible to construe the action as a holding that a direct appeal from the conviction was the only remedy available to Wade. The Attorney General's motion to dismiss the *habeas corpus* appeal seemed to make that point and the Supreme Court might have adopted it as the sole ground of dismissal. Had that been the situation, the case before us would be in an entirely different posture. Wade would then be in the position of seeking relief in a federal court after having chosen to forego the opportunity to secure recognition of his claim by the exclusive mode designated by Florida.

But the doubts as to the availability of *habeas corpus* in Florida for the purpose at hand have been dispelled by the subsequent decision of the Supreme Court of Florida in *Johnson* v. *Mayo,* 158 Fla. 264, 28 So. 2d 585. That case was a *habeas corpus* proceeding in which the Florida court proceeded to pass upon the merits of a claim identical with that raised by Wade. In so doing, the court relied upon the disposition of Wade's *habeas corpus* appeal, stating that it had been dismissed as frivolous. As the *Johnson* case makes clear, Wade's appeal was considered frivolous because the right to counsel in a non-capital case is counter to the settled law of Florida. Reference was made in the *Johnson* decision to the contrary decisions in other states and to "the rule in the Federal Courts but we are of the view that those decisions do not control in Florida." 158 Fla. at 266, 28 So. 2d at 586.

Thus the Supreme Court of Florida announced unambiguously less than a year and a half after its dismissal of Wade's appeal that its action had been grounded on the merits of the constitutional issue tendered by Wade, rather than on a holding that a direct appeal was the only way to raise that issue. It is not for us to contradict this construction by the Florida court and to attribute the dismissal of Wade's appeal to a state ground of procedure which is negatived by both the decision and the reasoning in the later *Johnson* case.

The only real problem in this case concerning the propriety of the District Court entertaining Wade's petition relates to the effect of his failure to seek a writ of certiorari from this Court following the action of the Supreme Court of Florida on his *habeas corpus* appeal. It has been said that "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." *Ex parte Hawk,* 321 U. S. 114, 116–117. The problem is to reexamine this statement in the light of the facts of this case.

The requirement that state remedies be exhausted before relief is sought in the federal courts is grounded primarily upon the respect which federal courts have for the state judicial processes and upon the administrative necessities of the federal judiciary. State courts are duty bound to give full effect to federal constitutional rights and it cannot be assumed that they will be derelict in their duty. Only after state remedies have been exhausted without the federal claim having been vindicated may federal courts properly intervene. Indeed, any other rule would visit upon the federal courts an impossible burden,

forcing them to supervise the countless state criminal proceedings in which deprivations of federal constitutional rights are alleged.

But the reasons for this exhaustion principle cease after the highest state court has rendered a decision on the merits of the federal constitutional claim. The state procedure has then ended and there is no longer any danger of a collision between federal and state authority. The problem shifts from the consummation of state remedies to the nature and extent of the federal review of the constitutional issue. The exertion of such review at this point, however, is not in any real sense a part of the state procedure. It is an invocation of federal authority growing out of the supremacy of the Federal Constitution and the necessity of giving effect to that supremacy if the state processes have failed to do so.

After state procedure has been exhausted, the concern is with the appropriate federal forum in which to pursue further the constitutional claim. The choice lies between applying directly to this Court for review of the constitutional issue by certiorari or instituting an original *habeas corpus* proceeding in a federal district court. Considerations of prompt and orderly procedure in the federal courts will often dictate that direct review be sought first in this Court. And where a prisoner has neglected to seek that review, such failure may be a relevant consideration for a district court in determining whether to entertain a subsequent *habeas corpus* petition.

But the factors which make it desirable to present the constitutional issue directly and initially to this Court do not justify a hard and fast rule to that effect, especially in view of the volume of this Court's business. Writs of certiorari are matters of grace. Matters relevant to the exercise of our certiorari discretion frequently result in denials of the writ without any consideration of the merits. The constitutional issue may thus have no bearing upon

the denial of the writ. Where it is apparent or even possible that such would be the disposition of a petition for certiorari from the state court's judgment, failure to file a petition should not prejudice the right to file a *habeas corpus* application in a district court. Good judicial administration is not furthered by insistence on futile procedure.

Moreover, the flexible nature of the writ of *habeas corpus* counsels against erecting a rigid procedural rule that has the effect of imposing a new jurisdictional limitation on the writ. *Habeas corpus* is presently available for use by a district court within its recognized jurisdiction whenever necessary to prevent an unjust and illegal deprivation of human liberty. Cf. *Price* v. *Johnston,* 334 U. S. 266, 283. Where the matter is otherwise within the jurisdiction of the district court, it is within the discretion of that court to weigh the failure to seek certiorari against the miscarriage of justice that might result from a failure to grant relief. In short, we refuse to codify the failure to invoke the discretionary certiorari powers of this Court into an absolute denial of the district court's power to entertain a *habeas corpus* application. The prevention of undue restraints on liberty is more important than mechanical and unrealistic administration of the federal courts.

Fear has sometimes been expressed that the exercise of the district court's power to entertain *habeas corpus* petitions under these circumstances might give rise to frequent instances of a single federal judge upsetting the judgment of a state court, often the highest court of the state. But to restrict the writ of *habeas corpus* for such reason is to limit it on the basis of a discredited fear. Experience has demonstrated that district court judges have used this power sparingly and that only in a negligible number of instances have convictions sustained by state courts been reversed. Statistics compiled

by the Administrative Office of the United States Courts show that during the fiscal years of 1943, 1944 and 1945 there was an average of 451 *habeas corpus* petitions filed each year in federal district courts by prisoners serving state court sentences; of these petitions, an average of but 6 per year resulted in a reversal of the conviction and a release of the prisoner. The releases thus constituted only 1.3% of the total petitions filed. In light of such figures, it cannot be said that federal judges have lightly exercised their power to release prisoners held under the authority of a state. See *Ex parte Royall,* 117 U. S. 241, 253.

In the instant case, we believe that it was well within the discretion of the District Court to consider Wade's petition for a writ of *habeas corpus.* The Florida courts had given a full and conclusive answer to his claim that he had been denied his constitutional right to counsel. No other remedies were available in Florida. True, he did not seek certiorari following the dismissal of his *habeas corpus* appeal by the Supreme Court of Florida. But at the time of that dismissal, it was extremely doubtful, to say the least, whether the constitutional issue had really been decided. That doubt was such as to make it reasonably certain that this Court would have denied certiorari on the theory that an adequate state ground appeared to underlie the judgment. His failure to make this futile attempt to secure certiorari accordingly should not prejudice his subsequent petition for *habeas corpus* in the District Court. Otherwise he would be left completely remediless, having been unable to secure relief from the Florida courts and being barred from invoking the aid of the federal courts.

As to the merits of Wade's constitutional claim, the District Court made the following findings after a hearing at which Wade and the trial judge gave testimony:

"The Court has heard the evidence of the respective parties and the argument of their counsel. It appears that petitioner, at the time of his trial in the Criminal Court of Record of Palm Beach, Florida, was eighteen years old, and though not wholly a stranger to the Court Room, having been convicted of prior offenses, was still an inexperienced youth unfamiliar with Court procedure, and not capable of adequately representing himself. It is admitted by the Judge who presided at petitioner's trial on March 6, 1945 that petitioner in open Court, before trial commenced, requested said Judge to appoint counsel for him, but the request was denied and petitioner placed on trial without counsel. . . . The denial of petitioner's request in the circumstances here involved constitutes a denial of due process, contrary to the 14th Amendment of the Federal Constitution, which renders void the judgment and commitment under which petitioner is held. . . ."

As the Circuit Court of Appeals pointed out, the evidence at the hearing before the District Court further showed that during the progress of the trial Wade (a) was advised by the trial judge of his right to challenge jurors and excuse as many as six without reason, a right which he did not exercise; (b) was afforded an opportunity, which he accepted, to cross-examine state witnesses; (c) took the stand and testified in his own behalf; and (d) was offered the privilege of arguing his case to the jury but declined, as did the prosecuting attorney.

We are not disposed to disagree with the findings and conclusion of the District Court. Its determination was a purely factual one to the effect that Wade was an inexperienced youth incapable of adequately representing himself even in a trial which apparently involved no complicated legal questions. This is a judgment which is peculiarly within the province of the trier of facts,

based upon personal observation of Wade. And we do not find that the District Court's determination was clearly erroneous.

There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment.

The Circuit Court of Appeals was therefore in error in reversing the District Court's judgment. It was also in error in assuming that the failure to appoint counsel in a non-capital case in a state court is a denial of due process under the Fourteenth Amendment only if the law of the state requires such an appointment. To the extent that there is a constitutional right to counsel in this type of case it stems directly from the Fourteenth Amendment and not from state statutes. *Betts* v. *Brady,* 316 U. S. 455, 473.

*Reversed.*

MR. JUSTICE REED, dissenting.

Donald Wade was brought to trial March 14, 1945, in the Criminal Court of Record of Palm Beach County, Florida. On the same day, after proceedings before the presiding judge in which Wade represented himself, he was convicted of the crime of breaking and entering, and sentenced to five years' imprisonment. Wade did not appeal his conviction, but on March 16, 1945, having obtained the aid of counsel, he brought a petition for a writ of habeas corpus in the Circuit Court of Palm Beach County; on March 22, 1945, that court quashed the writ; an appeal from the order quashing the writ was taken to the Supreme Court of Florida and on May

14, 1945, that court dismissed the appeal without stating whether it disposed of the case on the merits or upon a procedural ground.[1] However, in a later case, *Johnson v. Mayo,* 158 Fla. 264, 28 So. 2d 585, the Florida Supreme Court indicated that its ruling in the *Wade* case had been upon the merits. For the purposes of this opinion, I assume that this decision was upon the merits. Wade failed to bring a writ of certiorari to this Court to review the action of the state Supreme Court. On May 8, 1946, a petition for a writ of habeas corpus was filed in the Federal District Court for the Southern District of Florida. The writ was granted and a hearing set for May 17, 1946. At the hearing the court examined Wade's claim that he had been deprived of his constitutional rights by the failure of Florida to furnish him with counsel. It concluded that Wade had been deprived of those rights and ordered that he be released from the custody of the respondent, Mayo, and be remanded to the custody of the sheriff of Palm Beach County, Florida, to be held for any further proceedings which the state should take. On appeal, the Circuit Court of Appeals for the Fifth Circuit reversed the lower court. It held that the Constitution does not require that a state furnish counsel to one in the position of Wade. It based this conclusion, we think, from examination of its opinion, on *Betts* v. *Brady,* 316 U. S. 455, not on any ruling that state law determines the necessity for the appointment of counsel in state cases in all non-capital prosecutions.[2] We granted certiorari, 331 U. S. 801; the case was submitted to us; on November 10, 1947, we ordered the case restored to the docket for reargument, directing that counsel discuss these questions: "(1) the propriety of the exercise of jurisdiction by the District Court in this case

---

[1] *Wade* v. *Kirk,* 155 Fla. 906, 23 So. 2d 163.

[2] *Mayo* v. *Wade,* 158 F. 2d 614.

when it appears of record, in the state's motion for dismissal of the appeal on habeas corpus, that petitioner had not availed himself of the remedy of appeal from his conviction, apparently open after trial though now barred by limitation . . . (2) whether the failure of Florida to make this objection in this proceeding affects the above problem."

## I.

The first question in this case is whether Wade's failure to bring a writ of certiorari to this Court from the judgment of the Florida Supreme Court in his state habeas corpus proceeding should affect his effort to obtain release through a federal writ of habeas corpus. Or, to rephrase the problem, should certiorari to this Court be considered a part of the state remedy for purposes of the well-recognized doctrine of exhaustion of state remedies? *Mooney* v. *Holohan,* 294 U. S. 103.

This inquiry may be started by considering *Ex parte Hawk,* 321 U. S. 114. The unanimous opinion in this case was handed down January 31, 1944. Hawk had made a motion for leave to file a writ of habeas corpus in this Court. His application was denied on the ground that he had failed to exhaust the state remedies available to him. The opinion in Hawk's case, however, has been understood by this and other courts as having been designed to give direction for procedure to federal courts in their consideration of applications for habeas corpus brought by a person confined under a state criminal conviction.[3] One of the rules which this Court prescribed governs the issue now under consideration.

---

[3] This Court has, in a number of instances, through its Clerk, distributed this opinion to state prisoners seeking habeas corpus relief in federal courts.

*Potter* v. *Dowd,* 146 F. 2d 244, 248: "The Hawk decision is the latest of the Supreme Court on the subject. It was no doubt in-

"Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted. *Tinsley* v. *Anderson,* 171 U. S. 101, 104–5; *Urquhart* v. *Brown,* 205 U. S. 179; *United States ex rel. Kennedy* v. *Tyler,* 269 U. S. 13; *Mooney* v. *Holohan, supra,* 115; *Ex parte Abernathy,* 320 U. S. 219." [4]

After a person, protected by the presumption of innocence, has been convicted by a state trial court and his conviction has been subjected either to direct or collateral attacks in the state courts,[5] wise administration commands that this Court be asked, by appeal or certiorari, to pass upon the federal constitutional questions presented.[6] It is only by such a procedure that the validity of state criminal conviction can be expeditiously and finally adjudicated.[7]

The lower federal courts have consistently followed this rule of practice. Some district judges have used form let-

---

tended to enlighten the Federal inferior courts so that the rather difficult road which they must travel will have fewer obstructions. Also, the convict who believes he has been denied rights guaranteed him by the Federal Constitution will find the proper judicial haven he is seeking."

[4] *Ex parte Hawk, supra,* at 116–17.

[5] If a state judgment is based upon an adequate state ground, a failure to request review by this Court does not prejudice the prisoner. *White* v. *Ragen,* 324 U. S. 760, 767; *House* v. *Mayo,* 324 U. S. 42, 48.

[6] At pp. 691–692, *infra,* I comment upon the delicate nature of the federal habeas corpus jurisdiction over state convictions. Those observations are relevant here.

[7] See pp. 694–695, *infra.*

ters which they sent to convicts confined in state prisons who sought habeas corpus.[8] In *Gordon* v. *Scudder,* 163 F. 2d 518, the Circuit Court of Appeals for the Ninth Circuit applied the rule to a state habeas corpus proceeding in which the habeas corpus had been denied without opinion. All of the circuit courts which have considered this rule have approved it.[9]

Today the Court both limits and confuses the doctrine of exhaustion of state remedies so clearly expounded in *Ex parte Hawk, supra.* Certainty in habeas corpus pro-

---

[8] An example of such a letter appears in the record in *Ex parte Hanley,* 322 U. S. 708:

"Your petition for writ of habeas corpus has been received and examined. From such examination, it appears that, if filed, your petition would have to be dismissed for the reason that it does not appear therefrom that you have exhausted your remedies in the Supreme Court of the United States, in accordance with the suggestion contained in a recent opinion of the Supreme Court of the United States in the case of *Ex parte Henry Hawk* (filed January 31, 1944), wherein the court said:

" 'Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts *and in this court by appeal or writ of certiorari,* have been exhausted.'

Accordingly, your petition has not been filed and is returned herewith. If, however, you desire to make a record in this court, you may return the petition (referring to this letter) with the request that it be filed, and it will be filed in the office of the clerk of this court.

"I do not wish to be understood as expressing any opinion on the merits of your case."

[9] See *Lyon* v. *Harkness,* 151 F. 2d 731, 733 (C. C. A. 1st); *Monsky* v. *Warden of Clinton State Prison,* 163 F. 2d 978, 979 (C. C. A. 2d); *Stonebreaker* v. *Smyth,* 163 F. 2d 498, 501–502 (C. C. A. 4th); *Nusser* v. *Aderhold,* 164 F. 2d 127 (C. C. A. 5th); *Makowski* v. *Benson,* 158 F. 2d 158 (C. C. A. 6th); *Ross* v. *Nierstheimer,* 159 F. 2d 994 (C. C. A. 7th); *Guy* v. *Utecht,* 144 F. 2d 913, 915 (C. C. A. 8th); *Gordon* v. *Scudder, supra* (C. C. A. 9th); *Herzog* v. *Colpoys,* 79 U. S. App. D. C. 81, 143 F. 2d 137, 138.

cedure for review of state convictions is essential so that the applicant may know the way to test the constitutionality of his conviction and so that the public and its judicial system may be spared undue expense and interference from a succession of petitions that cannot be considered on the merits because of procedural defects. The serious and difficult problems of habeas corpus procedure in the federal courts cannot be solved by rules which have as their very core vagueness and uncertainty.[10] I conclude that certiorari should be considered a part of the state procedure for purposes of habeas corpus.

## II.

The next issue is this. Can Wade, having failed to use a state remedy once available [11]—appeal—and having failed to take a writ of certiorari to this Court from the denial of his state habeas corpus, with no conditions existing or claimed that restricted his ability to proceed in the regular course in the handling of his case after verdict, obtain relief in a federal habeas corpus proceeding for an alleged deprivation of his constitutional right to counsel when it appears that no state remedy in which relief can be obtained is now available? [12]

---

[10] Cf. dissent in *Maggio* v. *Zeitz*, 333 U. S. 56, 81.

[11] "An appeal . . . may be taken only within ninety days after the judgment or sentence appealed from is entered, except that an appeal from both judgment and sentence may be taken within ninety days after the sentence is entered." 24 Fla. Stat. Ann. § 924.09.

[12] Florida provides two devices for collateral attack upon criminal convictions: habeas corpus and coram nobis. Wade has tried habeas corpus and failed. *Wade* v. *Kirk*, 155 Fla. 906, 23 So. 2d 163. Coram nobis is available only to bring to the attention of the court specific facts, existing at the time of the trial, but not shown by the record and not known by the court or by the defendant or his counsel at the time of the trial. *Lamb* v. *State*, 91 Fla. 396, 107 So. 535. See *House* v. *State*, 130 Fla. 400, 177 So. 705; cf. *Hysler* v. *Florida*,

The federal courts have the power to discharge upon a writ of habeas corpus "a prisoner . . . in custody in violation of the Constitution . . . of the United States . . . ." [13] This Court held in *Frank* v. *Mangum,* that this writ is a proper procedure "to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution . . . ." [14] The dissent in the *Frank* case agreed with the Court's theory of the availability of habeas corpus, saying at p. 346: "But *habeas corpus* cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved opens the inquiry whether they have been more than an empty shell." As Wade alleged a deprivation of his constitutional rights, the district court had jurisdiction to entertain the petition for the writ of habeas corpus.

Habeas corpus is, however, a discretionary writ.[15] Thus, the question presented is this: Was it proper for the

---

315 U. S. 411, 415–16. The facts upon which Wade seeks relief were known, during the course of the trial, both to himself and to the trial judge.

[13] 28 U. S. C. §§ 451–53. Under the Judiciary Act of 1789, the writ could not issue if the prisoner was held under final process based upon a judgment of a court of competent jurisdiction. *Ex parte Watkins,* 3 Pet. 193. By the Act of February 5, 1867, Congress expanded the power of the federal courts to issue the writ in situations in which the Federal Constitution has been violated. 14 Stat. 385, ch. 28; see *Hawk* v. *Olson,* 326 U. S. 271, 274–75; *Frank* v. *Mangum,* 237 U. S. 309, 330–32.

[14] *Frank* v. *Mangum,* 237 U. S. 309, 331.

[15] *Ex parte Royall,* 117 U. S. 241, 250 *et seq.; In re Wood,* 140 U. S. 278, 290; *Cook* v. *Hart,* 146 U. S. 183, 195; *In re Frederich,* 149 U. S. 70, 75; *New York* v. *Eno,* 155 U. S. 89; *In re Lincoln,* 202 U. S. 178, 181; *Urquhart* v. *Brown,* 205 U. S. 179; *Salinger* v. *Loisel,* 265 U. S. 224, 231; *Goto* v. *Lane,* 265 U. S. 393, 403; *United States ex rel. Kennedy* v. *Tyler,* 269 U. S. 13, 17; *Ex parte Hawk,* 321 U. S. 114.

district court to exercise its jurisdiction when it appeared of record that Wade had not availed himself of the remedy of appeal, open after trial though now barred by limitation, and had failed to exhaust, by writ of certiorari, the state remedy of habeas corpus? An answer to this problem can best be derived from a consideration of the nature and function of habeas corpus in a federal system of government, the relevant precedents and analogies drawn from the decided habeas corpus cases, and the resolution of similar questions in related fields.

State judicial systems are designed to provide places of trial for offenders against the criminal laws of their respective states. State courts equally with federal courts administer justice under the authority and limitations of the Constitution of the United States, the supreme law of the land, binding the judges in every state "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." [16] Thus, whenever a prisoner brings a petition for a writ of habeas corpus in the federal courts challenging collaterally a conviction in the state courts and asking release from state custody, serious questions of the relation between the federal and state judicial structures are raised. "It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of *habeas corpus,* be taken out of the custody of the officers of the State and finally discharged therefrom . . . ." [17] Respect for the theory and practice of our dual system of government requires that federal courts intervene by habeas corpus in state criminal prosecutions only in exceptional circumstances. Their duty compels them to act where the state fails to provide a

[16] Const., Art. VI; *Robb* v. *Connolly,* 111 U. S. 624, 637.

[17] *Baker* v. *Grice,* 169 U. S. 284, 291.

remedy for violations of constitutional rights but due regard for a state's system of justice admonishes federal courts to be chary of allowing the extraordinary writ of habeas corpus where the accused, without excuse, has not exhausted the remedies offered by the State to redress violations of federal constitutional rights.[18]

The desirability of discretionary limitation of the habeas corpus power of federal courts in respect to state criminal prosecutions which inheres in the dual sovereignties of the federal system is re-enforced by considerations of practical administration: (1) it is not to be assumed that state courts deliberately deny to the individual his rights under the Federal Constitution; (2) the normal paths of review—appeal and petition for certiorari—are open to correct federal constitutional errors in state criminal proceedings; (3) extravagant exercise of federal jurisdiction would furnish another technique of delay in a criminal system which often permits long periods of time to elapse between sentencing and execution of sentence.

Because of the above reasons, the federal courts exercise their habeas corpus jurisdiction where an individual is in the custody of a state in limited types of situations. For example: (1) where all state remedies have been exhausted; (2) where the state remedy is seriously inadequate;[19] and (3) where a state attempts to interfere improperly with the Federal Government.

The third class of cases represents the largest group of situations in which federal courts exercise habeas corpus jurisdiction without the exhaustion of state remedies. The cases of this type which have come before this Court are examples of the use of habeas corpus to prevent state

---

[18] See *Frank* v. *Mangum*, 237 U. S. 309, 329; *Ex parte Royall*, 117 U. S. 241, 247–54; *Mooney* v. *Holohan, supra.*

[19] See *Ex parte Hawk*, 321 U. S. 114, 118.

interference with the administration of a branch of the Federal Government,[20] or with a federal agency,[21] or with treaty rights of the United States.[22]

The second class is represented in this Court by only one case, *Moore* v. *Dempsey,* 261 U. S. 86. There exhaustion of state remedies was not required.[23] "We assume in accordance with that case [*Frank* v. *Mangum,* 237 U. S. 309, 335] that the corrective process supplied by the State may be so adequate that interference by *habeas corpus* ought not to be allowed. . . . But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights." [24] That *Moore's* case is unique, emphasizes its unusual nature; this Court has not again been compelled to resort to this extreme procedure to protect constitutional rights.

The greatest number of habeas corpus cases in the federal courts fall into class one. In *Ex parte Hawk, supra,* we stated the principle which governs these cases: "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction

---

[20] *In re Neagle,* 135 U. S. 1; *Hunter* v. *Wood,* 209 U. S. 205 (impairment of the functions of the federal courts); *In re Loney,* 134 U. S. 372 (impairment of the functions of the legislative and judicial branches of the Federal Government).

[21] *Boske* v. *Comingore,* 177 U. S. 459; *Ohio* v. *Thomas,* 173 U. S. 276.

[22] *Wildenhus's Case,* 120 U. S. 1.

[23] See *State* v. *Martineau,* 149 Ark. 237, 232 S. W. 609.

[24] *Moore* v. *Dempsey, supra,* at 91.

for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted. . . ."[25] Litigation of this category offers the best example of the general principle of federal-habeas-corpus restraint. The insistence that state remedies be exhausted is but a concise statement of the proposition that state courts must, in all but the most exceptional cases, be the forums in which all the problems incident to a state criminal prosecution are to be answered.

Where a state offers an adequate remedy for the correction of errors in criminal trials, that remedy must be followed. Where there is a denial of constitutional rights by the highest court of a state, a remedy exists by direct review in this Court.[26] An accused should not be permitted to reserve grounds for a habeas corpus petition in federal courts which would have furnished a basis for a review in regular course in the state court; not even when those grounds are that the accused was denied a constitutional right by a state court subject to reversal by a higher state court.[27] To permit such trifling with state criminal law would disrupt its efficient administration. The federal court's refusal of consideration depends on the rule that the federal courts should not utilize habeas corpus to take the place of state remedies except in extraordinary situations where otherwise the accused

---

[25] *Ex parte Hawk, supra,* at 116–17.

[26] *Powell* v. *Alabama,* 287 U. S. 45; *Urquhart* v. *Brown,* 205 U. S. 179.

[27] *Andrews* v. *Swartz,* 156 U. S. 272, 276; *In re Wood,* 140 U. S. 278, 289; *Ex parte Spencer,* 228 U. S. 652. See *Glasgow* v. *Moyer,* 225 U. S. 420, 430; *Waley* v. *Johnston,* 316 U. S. 101, 105; *Sunal* v. *Large,* 332 U. S. 174. *Bowen* v. *Johnston,* 306 U. S. 19, 27: "The rule is not one defining power but one which relates to the appropriate exercise of power."

would be "remediless."[28] It is not seemly that years after a conviction, when time has dulled memories, when death has stilled tongues, when records are unavailable, convicted felons, unburdened by any handicap to a normal presentation of any claim of unfairness in their trial, should be permitted to attack their sentences collaterally by habeas corpus because of errors known to them at the time of trial. When it is shown by the record that a petitioner in a federal court for relief from a state conviction that involves a denial of constitutional rights has without adequate excuse failed to use an available state judicial remedy, although all such remedies are now barred to him by limitation, I think that federal courts should not intervene to correct the error.

In *Goto* v. *Lane,* 265 U. S. 393, this Court was asked to consider the issue of whether a group of prisoners, convicted of a crime in the territorial courts of Hawaii, had the right to raise in a habeas corpus proceeding brought in a federal district court alleged deprivations of their constitutional rights. The Court said: "And, if the petitioners permitted the time within which a review on writ of error might be obtained to elapse and thereby lost the opportunity for such a review, that gave no right to resort to *habeas corpus* as a substitute."[29] The Court found no reasons which, in the exercise of a sound judicial discretion, excused the petitioners from seeking review by writ of error. Consequently, it affirmed the judgment of the district court which had refused to issue the writ. This case is a persuasive precedent in the situation now before us because the state courts of the forty-eight states and the territorial courts of Hawaii stood, in 1924, in

---

[28] *Ex parte Hawk, supra,* 117–18. See *Adams* v. *McCann,* 317 U. S. 269, 274; *United States ex rel. Kennedy* v. *Tyler,* 269 U. S. 13, 17.

[29] *Goto* v. *Lane, supra,* at 402. See also *Urquhart* v. *Brown,* 205 U. S. 179; *Riddle* v. *Dyche,* 262 U. S. 333; *Craig* v. *Hecht,* 263 U. S. 255, 277.

similar positions in relation to the federal judicial structure. As the scope of review of this Court in criminal cases from state courts and Hawaiian territorial courts was then the same, no valid distinctions can be drawn between *Goto's* case and the situation now before us.[30]

It should not be thought that the practice which I would follow represents the sole instance in our jurisprudence of the loss of the right to press constitutional questions because of failure on the part of the individual to raise those issues properly or in time. The principle that federal constitutional questions must be properly raised in state courts before they will be considered by this Court is too well established to require citation. In a case decided this Term, *Parker* v. *Illinois,* 333 U. S. 571, Parker was held to have lost his right to raise federal constitutional questions because of state procedure which required that those questions be raised by direct appeal to the state Supreme Court. Parker appealed his case to the intermediate Appellate Court and, consequently, lost any chance of an adjudication by this Court of those issues.[31]

---

[30] The Act of April 30, 1900, which established a government for the Territory of Hawaii, provided that: "The laws of the United States relating to appeals, writs of error, removal of causes, and other matters and proceedings as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the courts of the United States and the courts of the Territory of Hawaii." 31 Stat. 158. In 1925, the Circuit Court of Appeals for the Ninth Circuit was given power to review final decisions from the Supreme Court of Hawaii in all criminal cases ". . . wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved . . . ." 43 Stat. 936. This power is still retained and cases from the territorial courts now come to this Court only after they have been reviewed by the Ninth Circuit Court of Appeals. 28 U. S. C. § 225.

[31] See also *Central Union Co.* v. *Edwardsville,* 269 U. S. 190.

## III.

It seems to me that the considerations, analogies, and precedents discussed above admit of only one answer to the basic problem of this case. This petitioner had counsel in ample time to permit a petition for certiorari to this Court. There is not a suggestion in the record of any interference, through his own disabilities or otherwise, with petitioner's right to secure, through counsel of his own choice, review of his allegedly erroneous conviction.[32] Therefore, I think that the District Court to whom this petition for a writ of habeas corpus from a conviction in a state court was presented should have refused cognizance of the writ, *sua sponte,* since the record showed that state remedies were available[33] after the alleged denial of constitutional rights and that the petitioner neglected to take advantage of those remedies.[34] "Available" as here used carries the connotation of ability and opportunity to take advantage of the state procedure.[35] Florida's

[32] In this the case differs from *Williams* v. *Kaiser,* 323 U. S. 471, 472; *Tomkins* v. *Missouri,* 323 U. S. 485, 486; *Smith* v. *O'Grady,* 312 U. S. 329, 334.

[33] A state can leave a procedure open through its own courts by which constitutional questions may be raised at any time. If the state court passes upon the merits, this Court can review the constitutional question upon appeal or petition for certiorari. *Herndon* v. *Lowry,* 301 U. S. 242, 247. See *Lovelady* v. *Texas,* 333 U. S. 867 (cert. granted), *id.* 333 U. S. 879 (dismissed), *Ex parte Lovelady,* — Tex. Cr. R. —, 207 S. W. 2d 396.

[34] I would not here decide whether or not this rule applies to cases which are governed by the principle of *Moore* v. *Dempsey, supra,* or to the situation in which a state attempts to interfere improperly with the Federal Government.

[35] For example, if Wade had not been able to obtain counsel until too late for an appeal, appeal would not have been a remedy "available" to him. See *Price* v. *Johnston,* 334 U. S. 266; *De Meerleer* v. *Michigan,* 329 U. S. 663; *Downer* v. *Dunaway,* 53 F. 2d 586, 589–91.

failure to object to consideration of the petition for habeas corpus because certiorari was not requested cannot have the effect of authorizing a federal court to examine into the validity of the conviction. The reason for not allowing habeas corpus in such cases does not depend upon state acquiescence but upon the federal judicial policy of non-interference with state criminal administration unless there has been complete use and final exhaustion of state remedies.

On the hypothesis that the decision of the Florida Supreme Court dismissing Wade's appeal from the order of the Circuit Court of Palm Beach County, Florida, was entered on the ground that the remedy in Florida for the denial of the right to counsel was by appeal instead of habeas corpus, Wade stands in no better position. If that was the real basis of the dismissal of the appeal, Wade failed to avail himself of the remedy of appeal then open to him in Florida, though now foreclosed by limitation. No doubt his counsel by motion could have obtained a ruling from the Florida Supreme Court as to whether their dismissal was on a federal or state ground in view of the then rule of this Court in *Ex parte Hawk, supra,* at 117, that an applicant for habeas corpus in federal courts must exhaust state remedies including appeal or certiorari to this Court. This would have permitted Wade to bring his constitutional question here for review under a regular course of procedure. If the Florida Supreme Court had refused a clarifying order, this Court would have had resources for reaching a conclusion in such a situation. See *Loftus* v. *Illinois,* 334 U. S. 804. Consequently, I think that the judgment of the Circuit Court of Appeals should be affirmed and the case remanded to the District Court with instructions that the petition for habeas corpus be dismissed.

THE CHIEF JUSTICE, MR. JUSTICE JACKSON and MR. JUSTICE BURTON join in this dissent.