**Darrett Bernard BAKER et al.,**
**Petitioners–Appellees,**

v.

**Honorable Don METCALFE, Judge,**
**Criminal District Court, etc.,**
**Respondent–Appellant.**

No. 80–1626.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 9, 1981.

Rehearing and Rehearing En Banc
Denied Feb. 17, 1981.

Before AINSWORTH, Circuit Judge, KUNZIG, Judge *, and RANDALL, Circuit Judge.

AINSWORTH, Circuit Judge.

In this habeas corpus proceeding the issue is whether certain actions of the Dallas County, Texas, Assistant District Attorney constitute prosecutorial overreaching sufficient to bar, on double jeopardy grounds, the retrial of defendants whose first prosecution ended in a mistrial. Petitioners–appellees, Baker and Humphrey, were tried along with two other defendants, Bowie and Freeman, in Texas state court, but the proceedings against the defendants terminated when the state trial judge, Judge Metcalfe, declared a mistrial. Baker and Humphrey then filed Special Pleas of Double Jeopardy in the Texas trial court which were denied. Judge Metcalfe set a new trial date for petitioners. After seeking relief in the state appellate court, Baker and Humphrey filed this Petition for Writ of Habeas Corpus and for a Stay of State Court Proceedings in federal district court, pursuant to 28 U.S.C. §§ 2241 and 2254. The district court granted the writ and respondents–appellants, Judge Metcalfe and Texas Attorney General Mark White, appealed. We reverse.

## I.  FACTS

Baker, Humphrey, Bowie and Freeman were indicted for the January 6, 1979, rape of complainant. Joint trial of the four defendants began on October 10, 1979. The Dallas County Assistant District Attorney called the complainant to testify and, after her testimony was given, rested his case.

The jury was then dismissed for the day, and the court directed the prosecutor to give the defense attorneys all the information he had concerning the whereabouts of

Charles J. Baldree, Federal Appellate Section, Dallas, Tex., for respondent–appellant.

Frank Jackson, Dallas, Tex., for petitioners–appellees.

* Judge of the United States Court of Claims, sitting by designation.

Phyllis Johnson,[1] a person known by the defense to be an eyewitness to the January 6, 1979, incident. The Assistant District Attorney stated that he knew only what the complainant's testimony disclosed about Johnson's address. As the facts were later developed, Johnson had moved to another address in Dallas, and an investigator on the staff of the Dallas County District Attorney's office who was aware of the court's directive to the prosecutor also knew Johnson's new address.

At the trial the next day defendant Freeman's counsel called Freeman and other witnesses to the stand in his defense. Rec., vol. 2 at 17. Baker and Humphrey's attorney called one witness, Larry Black–Washington. After counsel for all the defendants had rested, the State closed without presenting any rebuttal testimony. The attorneys for Freeman and Bowie then closed. Plaintiff's Ex. 2 at 3. Counsel for petitioners Baker and Humphrey asked to approach the bench, and a conference among all attorneys concerning the jury charges ensued. During the conference, counsel for Baker and Humphrey stated his intention to close immediately after the conference. The Assistant District Attorney then stated that he wished to reopen the case to call another witness. When the trial resumed, Baker and Humphrey's counsel did close, and the prosecutor asked to reopen. Over defense objection, the prosecutor called Phyllis Johnson to the stand to corroborate the complainant's testimony. After Johnson testified and was thoroughly cross–examined by defense counsel, Plaintiff's Ex. 6 at 171–212, all defendants moved for a mis-

trial which Judge Metcalfe granted. Thereafter, on December 14, 1979, Judge Metcalfe overruled Baker and Humphrey's Special Pleas of Double Jeopardy, and set their new trial for January 14, 1980. Baker and Humphrey then filed their federal habeas petition. The federal district court stayed the state proceedings and ultimately granted their writ.

## II.  JURISDICTION

■ The State challenges the federal court's jurisdiction to entertain this habeas corpus petition and contends that petitioners Baker and Humphrey have had a full and fair adjudication in Texas state court of their constitutional plea of double jeopardy.[2] Therefore, under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), federal habeas corpus relief is not available. However, *Stone v. Powell* was concerned with federal habeas review of "a judicially created remedy [the exclusionary rule] rather than a personal constitutional right." 428 U.S. at 495 n.37, 96 S.Ct. at 3053 n.37. The Supreme Court has observed, "a state prisoner can win a federal writ of habeas corpus only upon a showing that the State participated in the denial of a fundamental right protected by the Fourteenth Amendment." *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). The right not "to be twice put in jeopardy of life and limb" is a fundamental right applicable to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). Accordingly, habeas review is proper.[3]

1. Plaintiff's Ex. 1 at 2.

2. The fifth amendment provides, in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ...." *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), held the double jeopardy clause applicable to the states.

3. It appears that in the district court the State also argued that since, under Texas law, the criminal prosecution of Baker and Humphrey was still pending, the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d

669 (1971), required that the federal court apply the equitable restraint doctrine in the interest of comity and federalism and await the outcome of the state court proceedings. However, there is no Texas state procedure by which petitioners may seek pretrial determination of their double jeopardy claim. Under Texas statutory procedure, the facts concerning special pleas are tried in the same proceeding as the trial on the merits. Former jeopardy is the only special plea available to a defendant under the law. *See* Tex.Code Crim.Proc.Ann. arts. 27.05 & 27.07 (Vernon 1976 & Supp.1980). It would violate petitioners' constitutional right

## III. STANDARD OF REVIEW

This case involves both the general standard of review that appellate courts must exercise in federal habeas petitions and the particular legal standards by which we determine whether the double jeopardy clause bars retrial of petitioners Baker and Humphrey.

It is settled that findings of fact by the district court in federal habeas corpus cases will not be set aside unless clearly erroneous. *Wade v. Mayo*, 334 U.S. 672, 683–84, 68 S.Ct. 1270, 1276, 92 L.Ed. 1647 (1948); *United States v. Cruz*, 581 F.2d 535, 541 (5th Cir. 1978), and cases cited therein. *See* Fed.R.Civ.P. 52(a); 5A Moore's Federal Practice ¶ 52.03[1] (2d ed.1980). However, it is equally settled that conclusions of law are not binding on appellate courts and that we are free to substitute our judgment for the district court's on the law. *Horn v. C. L. Osborn Contracting Co.*, 591 F.2d 318, 320 (5th Cir. 1979); 5A Moore's Federal Practice ¶ 52.03[2] (2d ed.1980). Mixed questions of law and fact, likewise, are not protected by the clearly erroneous rule. 9 Wright & Miller, Federal Practice and Procedure § 2589 at 753–54 (1971); *see Backar v. Western States Producing Co.*, 547 F.2d 876, 884 (5th Cir. 1977). Since violation of the double jeopardy clause is a question of law, *United States v. Nickerson*, 211 F.2d 909, 912 (7th Cir. 1954), we are not bound by the clearly erroneous standard.

Next we turn to the appropriate legal standards to apply in determining whether the double jeopardy clause bars reprosecution after a mistrial has been declared at defendants' request. For over 150 years, *United States v. Perez* has stood for the legal principle that in most situations the purposes of the double jeopardy clause are not threatened by retrial after the granting of a mistrial. 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824). Where the motion for mistrial is made by the defense, double jeopardy will bar reprosecution only in an extremely narrow set of circumstanc-

es. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. That a mistrial is merely necessary to avoid the consequences of judicial or prosecutorial error is not enough to bar reprosecution. *Id.* at 485, 91 S.Ct. at 557. The misconduct of the judge or prosecutor must be in bad faith, *id.;* *United States v. Wright*, 622 F.2d 792, 795 (5th Cir. 1980), and it must be intentional, or grossly negligent, *United States v. Luttrell*, 609 F.2d 1190, 1191 (5th Cir. 1980); *United States v. Kessler*, 530 F.2d 1246, 1256 (5th Cir. 1976). In addition, the bad faith prosecutorial (or judicial) overreaching must seriously prejudice the defendant. *United States v. Dinitz*, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976).

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," *United States v. Jorn*, [400 U.S.] at 485, 91 S.Ct. 547 at 557, 27 L.Ed.2d 543, threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States*, 372 U.S. [734] at 736, 83 S.Ct. 1033 at 1034 [10 L.Ed.2d 100].

424 U.S. at 611, 96 S.Ct. at 1081. *See United States v. Opager*, 616 F.2d 231, 234 (5th Cir. 1980). Applying these standards to the instant case, the double jeopardy clause would bar Baker and Humphrey's reprosecution only if the state judge or prosecutor were guilty of bad faith, intentional, or grossly negligent misconduct which seriously prejudiced petitioners in their state trial.

## IV. THE MERITS

The federal district court based its grant of the writ, first, on the Assistant District

against being "twice put to *trial* for the same offense" if their plea were not decided now. *Abney v. United States*, 431 U.S. 651, 661, 97

S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977) (emphasis in original).

Attorney's "springing this material, second witness [Phyllis Johnson] on [petitioners] after they had chosen to remain silent" by reopening the case for additional evidence, 489 F.Supp. 930, 932, and, second, on the Assistant District Attorney's failure to disclose the whereabouts of Phyllis Johnson after the court directed him to do so.

### A. *Reopening*

Article 36.02 of the Texas Code of Criminal Procedure provides as follows:

The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.

(Vernon 1966). The district court and Baker and Humphrey's counsel construe article 36.02 to require a showing of necessity before a case is reopened. However, whether or not to reopen is peculiarly left to the discretion of the trial judge, although this discretion is not unlimited. In certain instances, the judge must reopen the case.

If the evidence was admissible (irrespective of its weight, its probative value, or its cumulative character), and if it was offered before the charge was read, it will be reversible error to refuse the request to reopen for its receipt, unless it appears its introduction would have impeded the trial . . . .

*Tucker v. State*, 578 S.W.2d 409, 410 (Tex. Crim.App.1979); *Vital v. State*, 523 S.W.2d 662, 664–65 (Tex.Crim.App.1975). Judge Metcalfe risked committing reversible error if he had not reopened the case.

In *Holifield v. State*, 599 S.W.2d 836 (Tex.Crim.App.1980), a murder trial, both sides closed, and the charging conference with the judge was held. At the conference, defendant's counsel learned that the judge would not give the jury a self–defense charge. Defendant asked to reopen to take the stand and put self–defense in issue. The trial judge refused to reopen and the Texas Court of Criminal Appeals reversed. Here, the facts are substantially similar. At the bench conference on jury charges, the prosecutor learned that the judge was going to charge the jury on consent as to all defendants. The prosecutor immediately stated his intention to reopen in order to have the witness, Johnson, testify.[4] The judge allowed the prosecutor to reopen, and Johnson corroborated the complainant's testimony including the lack of consent.[5]

---

**4.** In the federal court hearing, Mr. Jackson, chief counsel for Baker and Humphrey, questioned Miss Cox, his co–counsel, concerning the charging conference, who responded in pertinent part as follows:

[Miss Cox] We were all in the chambers and the question of consent defense came up. The judge indicated that he denied [sic] to give it. Then I left the chambers and went into the courtroom and got your McClung's, which are patterned jury charges, out of your briefcase, took it back to chambers, and together, Mr. Bastas, the court reporter, standing behind the judge, and the judge went over the charges.

There was considerable debate on the issue of whether or not consent would be submitted to the jury because the State's attorneys were of the position that since the Defendants Baker and Humphrey had not testified, we were not entitled to the consent defense charge.

[Mr. Jackson] All right. Did Judge Metcalfe announce that he was going to charge on the defense of consent regarding all the Defendants in this case?

A. He said most definitely he would.

Q. And Mr. Prospere [the prosecutor] at that time, what did he say?

A. Well, he got up and as he was walking out of the room, as I recall, he said, "I intend to re–open."

Rec., vol. 2 at 20–21.

Q. (By Mr. Jackson) Miss Cox, would you— is there any portion of that record, or have you been able to locate in that—in that transcript anything regarding Mr. Prospere–Mr. Prospere's motion in re–opening or moving on closing?

A. Yes. On Page 8 of Petitioners' Exhibit Number 1, Mr. Prospere stated, "I rested my case, knowing that [Miss Johnson] was in the courthouse, knowing that I was not going to allow testimony [sic] in the charge to be read before I had an opportunity to call her. I rested and closed, then, to see whether you would have additional testimony, you all."

Rec., vol. 2 at 26–27.

**5.** Plaintiff's Ex. 6 at 150–213.

Since the jury had not yet been charged, the State's actions do not amount to prosecutorial overreaching. Judge Metcalfe did not abuse his discretion in reopening the case, nor did the Assistant District Attorney thereby commit any misconduct; therefore, Baker and Humphrey's further prosecution will not be barred on this ground.

### B. Failure to Disclose Witness' Whereabouts

The second ground for the district court's determination that the double jeopardy clause barred reprosecution of petitioners Baker and Humphrey was the failure of the Assistant District Attorney to disclose Johnson's new address to the defense after the trial judge had directed him to do so. He stated that the only address he had for Johnson was the one the complainant had given on the stand. However, as we have pointed out, an investigator from the District Attorney's office was aware of the court's directive and knew Johnson's correct address. The district court held that under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the prosecutor was required to make inquiry of his staff to comply with the court's order, 489 F.Supp. at 931 n.5, and that the prosecutor's conduct amounted to overreaching which barred defendant's reprosecution.

It is not clear that the holdings in *Giglio,* or in another case cited by petitioners at oral argument, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), are directly applicable to the facts of this case. *Giglio* and *Santobello* involved attorneys failing to disclose, or attorneys forgetting, promises made by their fellow attorneys who had previously handled the cases. Here, the prosecutor did not misrepresent or contradict any prior actions taken before the court; he was merely ignorant of information that the investigator, who had not been a part of the court proceedings, possessed. Even assuming *Giglio* can be read to impute the investigator's knowledge to the prosecutor, we cannot agree that the prosecutor was guilty of bad

faith misconduct which prejudiced petitioners Baker and Humphrey.

Under this court's recent decision in *United States v. Opager*, 616 F.2d 231 (5th Cir. 1980), the prosecutor's actions do not amount to misconduct "egregious enough to warrant the serious sanction of prohibiting reprosecution." *Id.* at 237, *quoting United States v. Garza*, 603 F.2d 578, 580 (5th Cir. 1979). In *Opager*, the Government refused to obey the trial court's order to disclose the whereabouts of a government informant to the defense. There was no question that the prosecutor knew where the informant was, and the only excuse the Government could offer for its refusal was that the informant did not wish to speak to defense counsel. 616 F.2d at 236. Nevertheless, this court held,

> The government's arguments for not complying with defense counsel's disclosure request, while lacking in merit, are not frivolous and while the failure to obey the court's order is inexcusable, there is no evidence that it was done in bad faith or that it constitutes prosecutorial overreaching.

*Id.* at 237. In the instant case, the fact that the prosecutor did not actually know Johnson's new address is not disputed and is not a frivolous reason for failing to comply with the request. Like the court in *Opager*, we find on these facts that the prosecutor did not act in bad faith.

Although the investigator for the State should have provided defense counsel with the witness Johnson's new address, it is clear that the failure to disclose Johnson's whereabouts did not prejudice Baker and Humphrey. As we have indicated with record references, their counsel fully cross-examined Johnson and challenged her testimony. As the request for her address shows, Baker and Humphrey's counsel knew of Johnson and knew that she was an important witness. Her testimony could not have come as a surprise.

### V. CONCLUSION

Reopening the case before the charge was read to the jury was authorized by Texas

statutory law and did not constitute an abuse of discretion by Judge Metcalfe; nor was there any prosecutorial misconduct or prejudice in the circumstances. Accordingly, the judgment of the district court is

REVERSED.