66 So.2d 865 (1953)
SNEED
v.
MAYO.
Supreme Court of Florida, Division A.
July 31, 1953.
*867 Bill Sneed, in pro. per.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen, Asst. Atty. Gen., for respondent.
SEBRING, Justice.
This is an original habeas corpus proceeding which originated in this Court when the petitioner, who is a prisoner at the State Prison Farm, sent the following letter to one of the Justices:
"Honorable Sir:
`On May 13th, 1952, in the Palm Beach County Criminal Court of Record, I was tried for an alleged offense of Breaking and Entering with intent to commit Larceny.
"After finding me guilty, Judge Newall sentenced me to serve five (5) years in the state prison. Your Honor, I am poor and uneducated, hardly able to read or write and a friend is helping me to prepare this letter seeking your help. I am but 21 years of age and have never before appeared in a Court of law.
"At the time of my arraignment before Judge Newall, I told him truthfully that I was not guilty of the criminal charge. Also, I informed the Court of my age and my ignorance, that I was completely uneducated and unfamiliar with legal matters or procedures. I explained that I was unable to defend myself and requested that counsel be appointed to represent me. I told Judge Newall that I was a pauper, unable to secure a lawyer and unable to get any help from any other source. Judge Newall told me that I would not need a lawyer because he would try me without a jury and would take care of my defense. I told him that I would much rather have a jury trial because I was not guilty. I did not waive a jury and objected to trial without jury.
"However, on May 13th, I was forced to trial without a lawyer and without a jury, over my objections. It is my understanding that a denial of jury trial was a denial of my constitutional rights, and that to try an ignorant, uneducated youth like myself was depriving me of a fair and impartial trial. I now understand that a judgment of guilt predicated thereon is void and my sentence of imprisonment illegal. Accordingly, will Your Honor please look over the enclosed certified copies of Information, Judgment, Sentence and trial court minutes. They show no jury, no counsel, and no waiver of either.
"If I am entitled to relief by judicial process, will Your Honor please treat this letter as a formal application for whatever procedure is appropriate to the circumstances?
"Thank you very much.
 "Most respectfully yours,
 /s/ Bill Sneed 
 Bill Sneed "
*868 Attached to the letter was a certified copy of the minutes of the court in which the petitioner was convicted which read, in part, as follows:
"The Criminal Court of Record in and for Palm Beach County, Florida, convened on this 13th day of May, 1952, May Term, at 9:23 A.M., by Order of the Court with the Honorable Edward G. Newell, Judge of said Court present and presiding.
"Other Court Officials present were: T. Harold Williams, County Solicitor, L.H. Brannon, Assistant County Solicitor, J. Louie Carter, Clerk, Margaret L. Rogers, Deputy Clerk, C.B. Bowen, M.H. Partin, W.S. Bateman, and Emery Pickren, Deputy Sheriffs, and C.E. Jones, Court Reporter.
 "Case No. 17,221
 State of Florida
 v.
 Bill Sneed (B-M) Breaking And Entering
"This case having been previously set for trial before the Court without a jury at this time, comes now the State of Florida, by L.H. Brannon, Assistant County Solicitor and the defendant, Bill Sneed.
"At this time, the State Witnesses and Defendant were duly sworn according to law and the rule invoked.
"C.E. Jones, Court Reporter, was present for this case.
"Whereupon, Mrs. Charles W. Hoeffer, Edward Eberhardt, R.C. Croft, S.G. Roddick, Roy Cowart, Coleman Goodman, James S. Grantham, Lillian Anderson, Ira Partridge, Mrs. Wayne Morgan, Mary Bishop Walker, and Preston Wright testified in behalf of the State.
"Thereupon, R.C. Croft was recalled to testify in behalf of the State.
"Whereupon the defendant testified in his own behalf.
"Thereupon, Preston Wright was recalled to testify in behalf of the State.
"The Court having heard all the facts of this case and having duly considered the same, It is Ordered by the Court that the defendant herein do be adjudged Guilty.
"The defendant was then asked if he had anything further to say before sentence was pronounced and he saying nothing in bar or preclusion, the following sentence was then pronounced.
"Now, Therefore You, Bill Sneed, Having Been Adjudged Guilty of the crime of Breaking And Entering with intent to commit a felony, to-wit: Grand Larceny, as charged in the information filed herein, are adjudged by the Court to be guilty thereof, and for the crime for which you do now stand guilty and convicted, it is the judgment of the Court and the Sentence of the Law, that for your said offense, that you do be taken in custody by the Sheriff of Palm Beach County, Florida, and there be confined at hard labor for a period of Five (5) Years. * * *"
Although the informal communication sent by the prisoner to one of the Justices did not conform with the requirements of section 79.01, Florida Statutes 1951, F.S.A., governing applications for writs of habeas corpus, this Court, as it has done on occasions in the past where applicants without means have suggested serious constitutional question, treated the communication as sufficient and issued the writ of habeas corpus.
In due course the Honorable Nathan Mayo, as prison custodian of the State of Florida, filed his answer to the writ, which contained the following admissions, denials and recitals:
"* * * Respondent admits that * * the petitioner was tried and convicted * * * of breaking and entering with intent to commit larceny * * * was sentenced by the presiding judge * * * to serve five (5) years in the state prison and is presently fulfilling that sentence. Respondent neither admits nor denies, but avers that he is without knowledge as to the allegations of the petitioner, that he is poor and uneducated, hardly able to write and that a friend helped him prepare the letter seeking the writ and further neither admits nor denies that the petitioner is but twenty-one (21) years of age. Respondent denies that petitioner has never before appeared before a court of law but shows unto this court that the records of the respondent contain an F.B.I. report *869 showing that at various times the petitioner has had the opportunity to gain courtroom knowledge as a result of other court appearances on other charges. * * * Respondent admits that petitioner plead not guilty to the criminal charge but denies that his statement was truthful and further shows * * * that it appears from the records of respondent that subsequent to the petitioner's adjudication of guilt, at the time of his processing at the state prison, petitioner openly admitted his guilt. Respondent * * * alleges that he is without knowledge as to whether or not the petitioner informed the court below of his age and his ignorance and that he was completely uneducated and unfamiliar with legal matters or procedures * * * denies that petitioner explained that he was unable to defend himself and * * * that he requested that counsel be appointed to represent him * * * is without knowledge as to whether or not petitioner told [the presiding judge] that he was a pauper, unable to secure a lawyer and unable to get help from any other source. Respondent shows, however, that at no time was any request made by defendant for an attorney. * * * Respondent denies that [the presiding judge] told petitioner that he would not need a lawyer because he would try him without a jury and would take care of his defense * * * denies petitioner told the judge that he would much rather have a jury trial because he was not guilty * * * and denies that petitioner did not waive a jury and objected to trial without a jury * * * that the defendant did in fact waive a jury trial and stated to the court that he preferred a trial before the judge without a jury. * * * Respondent denies that petitioner was forced to trial and * * * that the trial was held without a lawyer and without a jury over petitioner's objection but shows unto the court that petitioner elected to proceed in such a manner * * * admits that the papers accompanying the petition show no waiver of jury or counsel but * * * shows unto this Court by the attached affidavit entitled Exhibit I * * * that the petitioner did in fact waive a jury trial and did not request counsel. * * *"
Attached to the return was a certified copy of the testimony taken at the trial of the defendant. Also attached, as Exhibit I to the return, was an affidavit made by the judge who presided at the trial of the petitioner, which contained the following material averments:
"I am the Judge of the above Court and presided at the trial of the defendant named above. Bill Sneed, a colored male.
"On April 15, 1952, the defendant appeared in open court and the information was read to him by [the] Assistant County Solicitor and said defendant pled not guilty. At that time the defendant was asked by [the Assistant County Solicitor] whether he desired a trial by a jury or before the Judge of the Court. The defendant said he preferred a trial before the Judge without a jury and the case was accordingly set for trial on April 22, 1952, before the Court without a jury. * * * On April 22, 1952, it was learned that the defendant was confined to a hospital and trial was continued. On May 12, 1952, witness subpoena for the State was * * issued. On the same date a witness subpoena for witnesses for the defendant was issued at the request of the defendant. On May 13, 1952, trial before the Court without a jury was had, and the testimony was duly reported by the official Court Reporter. The defendant was found guilty and adjudged guilty by the Judge of the Court at the conclusion of the trial, and sentenced to serve five years in the State Prison. At no time on either of the above dates did the defendant request an attorney or trial before a jury. * * *"
The matter is now before this Court for decision on the aforementioned pleadings, documents and papers.
The great writ of habeas corpus is a writ of right obtainable under our Constitution by all men who claim to be unlawfully imprisoned against their will. It is designed to test solely the legality of the petitioner's imprisonment, and may not be used as a substitute for appeal. Ex parte Amos, 93 Fla. 5, 112 So. 289; State ex rel. McLeod v. Logan, 87 Fla. 348, 100 So. 173; Kinkaid v. Jackson, 66 Fla. 378, 63 So. 706; Collingsworth v. Mayo, Fla., *870 37 So.2d 696. The purpose of the writ being to bring the petitioner before a competent judicial tribunal in order that inquiry may be made into the legality of his detention, neither the right to the issuance of the writ nor the right to be discharged from custody when a proper case has been made is dependent upon a meticulous observance of the rules of pleading. If during the proceedings consequent upon the issuance of the writ it is made to appear to the satisfaction of the court that the petitioner is unlawfully deprived of his liberty and is illegally detained against his will, he will be discharged from custody even though the original communication which prompted the issuance is of quite an informal nature. Ex parte Pells, 28 Fla. 67, 9 So. 833; Ex parte Amos, supra; Chase v. State, 93 Fla. 963, 113 So. 103, 54 A.L.R. 271. This is not to say, however, that the writ will be issued or an order of discharge will be entered without at least some good faith suggestion of illegal detention. From the very nature of the judicial process, there must exist, of necessity, some pattern of procedure designed to develop the issues, to the end that when the judicial labor is done the orders or judgments rendered by a competent tribunal will have the attributes of finality.
Ex parte Amos, supra, sets out, in brief, the methods that should be employed in habeas corpus proceedings to bring the question of legality of detention to issue. As stated in the opinion, after the respondent has filed his return, the petitioner may present exceptions raising questions of law; he may traverse the facts set forth in the return; he may allege facts not appearing in the petition or return that may be material in the case; or, he may adopt his petition as a traverse of the return.
Manifestly, in the state of the pleadings in the present case, the written communication of the petitioner should be treated as a traverse to the return; because he has not filed a reply to the return alleging material "facts not appearing in the petition or return," and the respondent in his return has failed to meet all of the issues tendered by the petitioner.
When the case is viewed in this manner, it is evident from the pleadings in the cause that the petitioner's trial in the court below was had before the trial court without the intervention of a jury. The petitioner asserts that he requested a jury trial, that he "did not waive a trial by jury and objected to trial without a jury"; the respondent, in his answer, denies the assertions. The official court record  the only vehicle through which a court of general jurisdiction can speak officially, Magnant v. Peacock, 156 Fla. 688, 24 So.2d 314; Barry v. Robson, Fla., 65 So.2d 739  fails to reflect that the petitioner voluntarily relinquished his right to trial by jury by a waiver made in "open court," as is required by the statute. Section 912.01, Florida Statutes 1951, F.S.A.
It is also evident from the pleadings that the petitioner was tried in the court below without the assistance of counsel. In his petition the petitioner asserts that he requested counsel and that over his objection he was "forced to trial without a lawyer"; the respondent in his answer denies the assertion. The official record of the trial proceeding is entirely silent as to whether the petitioner did or did not request counsel, or, if he waived counsel and elected to present his own defense, that he was of sufficient maturity, mentality, experience and understanding to make an intelligent waiver or to represent himself at the trial in an adequate fashion.
In the light of the assertions made by the petitioner as to what transpired at the threshold of the trial coupled with the assertions made by him as to his immaturity, ignorance and lack of education, we think that the failure of the official records to negative the charges made by the petitioner in respect to the type of trial accorded him presents a serious question as to the constitutional validity of the trial proceedings by which he was convicted, and suggests the grave necessity for the submission of evidence as to the truth or falsity of the charges asserted. See Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Johnson v. Mayo, Fla., 40 So.2d 134.
*871 Section 11 of the Declaration of Rights, Florida Constitution, F.S.A., declares that "In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury * * *." It also prescribes that in all such prosecutions, the accused "shall be heard by himself, or counsel, or both * * *."
As to the provision of section 11, Declaration of Rights, which guarantees the right of trial by jury, it has been the statutory law of this state since 1868 that in a trial for a misdemeanor a jury may be waived, provided the waiver is entered of record. Laws 1869, c. 1637, subc. 13, sec. 4. In May 1939, this Court held, in Zellers v. State, 138 Fla. 158, 189 So. 236, that even though the existing statute authorized waiver of a jury trial only in case of misdemeanors, a competent defendant accused of felony might waive his right to a trial by jury and consent to the trial of the issues by the court, provided the fact of his waiver was entered on the record. On October 10, 1939, the Florida Criminal Procedure Act became effective. Ch. 19554, Acts of 1939. Section 181 thereof provided that "In all cases except where a sentence of death may be imposed trial by jury may be waived by the defendant. Such waiver shall be made in open court and an indorsement thereof made on the indictment or information and signed by the defendant." Section 912.01, Florida Statutes 1951, F.S.A. (Emphasis supplied.)
Thus, while the right of an accused to waive trial by jury in all criminal cases except death penalty cases is now firmly established in this jurisdiction, it is clear that in order for a waiver to be binding on the accused the waiver must be made in open court and the fact of the waiver must appear affirmatively either from the record proper or from the transcript of the trial proceedings. See Jones v. State, 155 Fla. 558, 20 So.2d 901.
As to that provision of section 11, Declaration of Rights in the Florida Constitution, which guarantees an accused in a criminal prosecution the right to be heard by himself, or counsel, or both, it is stated in Cutts v. State, 54 Fla. 21, 45 So. 491, a case involving the death penalty:
"It has been the general practice in trial courts in this state, when a person charged with felony has been brought to the bar for arraignment, to inquire of the accused whether he had counsel to represent him, and if, upon inquiry, it developed that he had no attorney and was unable to employ one, to ask the accused if he desired one to represent him. If he signified his desire to be represented by counsel, then it has been the practice for the trial judge to appoint some attorney to represent the accused. This practice is in accord with the letter and spirit of the Bill of Rights, and Section 3969 of the General Statutes of 1906 [now section 909.21, Florida Statutes 1951, F.S.A., which requires the appointment of counsel in all capital cases when the defendant is insolvent]. * * * But the right of an accused to be defended by counsel is one which may be waived, and the trial court has no authority to compel one who is of mature age and judgment to accept the services of an attorney. While the practice in this state has been as indicated above, still there is no law requiring it [except in capital cases, by virtue of the statute], and it is not usual for the record to show that this practice is observed. In the absence of anything from the record which shows the contrary, it must be presumed that the trial court did its duty. It cannot be presumed that an accused person was denied the privilege of counsel when desired by him. * * * If the record fails to show whether the accused had counsel or not, or even if it shows that he did not have counsel, it is not ground for reversal, unless it further appears that the right to have counsel was denied. It is not to be presumed that the right was denied. * * *"
In Myers v. State, 84 Fla. 508, 94 So. 507, a case involving an offense less than capital, it is held that where the record does not show affirmatively that an accused person of mature age, unable to employ counsel, was denied the benefit of counsel, it will be presumed that the trial judge did his duty, and that the accused waived the *872 benefit of counsel. See also Watson v. State, 142 Fla. 218, 194 So. 640; Johnson v. State, 148 Fla. 510, 4 So.2d 671; Johnson v. Mayo, 158 Fla. 264, 28 So.2d 585.
To like effect is Johnson v. Mayo, Fla., 40 So.2d 134, 135, a post conviction habeas corpus proceeding involving the validity of a judgment in a larceny prosecution, wherein it is held: "Though the courts of this state doubtless have the inherent power to appoint defense counsel in any criminal prosecution where such course seems proper in the interest of fairness and justice, there is no requirement under Florida law that counsel be furnished an insolvent defendant, except in a prosecution involving a capital offense. Johnson v. Mayo, 158 Fla. 264, 28 So.2d 585; Sec. 909.21, Florida Statutes 1941, F.S.A. Such duty as may rest upon the Florida courts to furnish counsel in criminal cases less than capital arises by virtue of the Fourteenth Amendment to the United States Constitution, and it imposes no absolute requirement that counsel be furnished unless the accused is incapable of representing himself adequately at the trial on account of age, ignorance or lack of mental capacity. Whether any such incapacity exists is purely personal and is a factual issue which can be determined only by an examination and observation of the individual in question. Where a trier of the facts has made a finding on the issue his finding will not be disturbed if supported by competent credible evidence. Compare Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647."
From the above cited cases, and the state and federal decisions and statutes cited therein, certain principles seem clearly established:
(1) The court has no right to deprive the accused of the benefit of counsel in a criminal proceeding.
(2) The court is under no absolute duty to appoint counsel for indigent defendants except where capital punishment is involved.
(3) Where the record shows that the defendant did not have counsel, or fails to show whether he did or did not have counsel, it will be presumed that the defendant waived the benefit of counsel and elected to present his own defense  as every person has the right to do under the Florida Constitution. Decl.Rights, sec. 11.
(4) The presumption of waiver is rebutted by a showing that the accused was incapable, because of age, ignorance or lack of mental capacity, of representing himself adequately at the trial.
(5) Whether the defendant is or is not capable of representing himself adequately at the trial is a factual issue which can be determined only by an examination and observation of the defendant.
(6) Where a trier of the facts has made a finding on the issue, his finding will not be disturbed by this Court when supported by competent credible evidence of record.
(7) Where the question of competency has not been determined during the course of the trial, the issue may be raised in this Court in a post conviction proceeding.
(8) The issue is one that may be raised in the federal courts after state court proceedings have been concluded; provided the defendant "has exhausted the remedies available in the courts of the state, or * * there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C.A. § 2254.
In recent years a most prolific source of litigation in Federal District Courts has been in the field of habeas corpus to test state court criminal judgments on the asserted ground of denial of the right to counsel. The vast majority of these cases have proven to be without merit. As pointed out in Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 1275, 92 L.Ed. 1647, "* * * statistics compiled by the Administrative office of the United States Courts show that during the fiscal years of 1943, 1944 and 1945 there was an average of 451 habeas corpus petitions filed each year in federal district courts by prisoners serving state court sentences; of these petitions, an average of but 6 per year resulted in a reversal of the conviction and a release of the *873 prisoner. The releases thus constituted only 1.3% of the total petitions filed. * * *"
In 1945 the United States District Courts disposed of 503 habeas corpus cases involving state prisoners only. In 1948 the number of such cases had increased to 610, of which only 1.6 per cent were successful. See note, Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, 782.
The increase in this type of litigation in the federal courts would suggest either an appalling abuse of constitutional rights in state criminal trials or a scandalous abuse of the privilege of the writ of habeas corpus. Manifestly, the latter is the situation. It is apparent from the decisions that the federal courts, out of a proper regard for the rights of the very few persons who have been convicted in state court trials in violation of constitutional rights, have permitted themselves to be burdened by thousands of groundless, if not fraudulent, claims, many of which have been conjured up by prisoners after years of imprisonment, and after witnesses who might have been in a position to refute such claims are no longer available.
Obviously, a great volume of this litigation flowing from behind prison walls could be set at rest at its inception if the courts of the land would require full transcript or minute entries of what transpires in the course of a trial through every stage of the prosecution from arraignment through sentence. When the word gets around that the judicial records of all criminal trials will disclose that a prisoner's rights have been made known to him in advance of trial, and that his waivers have been accepted by the trial judge in open court and under such circumstances as to leave no doubt as to their voluntary and competent character, the courts will be faced with fewer post litem motam cases presented long after a trial on the criminal charge has been heard and concluded. The cost or inconvenience to the judicial system of following the suggested procedure would be insignificant compared to the cost incident to the trial of an ever increasing number of habeas corpus proceedings involving the transportation of convicts, witnesses, prosecutors, and judges who, in effect, are put on trial in the habeas corpus court by the convict.
Without in the slightest degree intending to impugn the motives of the petitioner, or to question the bona fides of the charges made by him in his petition, it is plain that the present habeas corpus proceeding points up the matter. The petitioner was tried in the court below without the assistance of counsel and without a jury. At the trial the state produced witnesses to sustain the criminal charge; the defendant testified in his own behalf. From a consideration of the evidence adduced at the trial it is plain that the guilt of the defendant was established by competent testimony. The defendant took no appeal from the judgment of conviction and the time within which an appeal could have been taken has long since expired. Subsequently the petitioner initiated this habeas corpus proceeding. In his petition he has made charges which, if true, are sufficient to invalidate the trial proceedings and require a new trial on the criminal information, not because the evidence adduced at the trial on the criminal charge was insufficient to establish guilt, but because, under the federal decisions, the judgment of conviction is void for failure of the trial court to afford to the defendant the safeguards guaranteed under the Federal Constitution. Betts v. Brady and Wade v. Mayo, supra; Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127.
To the petition in the instant case the respondent has filed a return, but the return fails to meet the charges of the petitioner in their entirety. Had a complete transcript been made of all that took place in the lower court when the petitioner's case was tried, the official court records might have cleared up the matter. However, the minutes, as they now stand, are entirely silent as to what transpired at the trial in respect to certain phases of the vital issues involved in this present proceeding. Though the respondent attempts to supply the deficiencies of the return and the court minutes by an affidavit from the judge who presided at the trial (Respondent's Exhibit I), it is settled *874 that a court of general jurisdiction speaks only through its record; that if the record is deficient on a material issue, the proper procedure is not to supply the omission by evidence aliunde, but, by correction, to make the record speak the truth. State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818; Hanley v. State, 50 Fla. 82, 39 So. 149. Therefore, while the facts averred in Exhibit I of the respondent's return might well be admissible as testimony, subject to cross-examination, at a hearing on the merits respecting the issue whether the constitutional rights of the petitioner have been violated, the use of the affidavit is not permissible to supplement official court minutes which are entirely silent in respect to important aspects of the issue. Compare Ex parte Pitts, 35 Fla. 149, 17 So. 76.
We conclude that because of the dispute as to the truth or falsity of the charges respecting the alleged violation of the constitutional rights of the petitioner, as to which the official court record is entirely silent, the cause should be set down for hearing on the merits. The purpose of such a hearing is not to contradict the judicial record, for this is not permissible in a habeas corpus proceeding. Spencer v. Gomez, 114 Fla. 688, 154 So. 858; Chapman v. Stubbs, 109 Fla. 192, 147 So. 227; Skipper v. Schumacher, 124 Fla. 384, 169 So. 58. See also Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Cochran v. State of Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453; Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154. Its purpose is to give the petitioner an opportunity to produce evidence, if he can do so, which will tend to invalidate the judgment of conviction by going behind but not contradicting the recitals of the judicial record in the cause. This he may do under the established rule that while the recitals in the official court record will be presumed to be true and valid as against collateral attack, any additional matter which might render the proceeding defective in substance may be the subject of inquiry. Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Huffman v. Alexander, Or., 251 P.2d 87. "Jurisdiction of the person and of the subject matter is not alone conclusive [and] the jurisdiction of the court to make or render the order or judgment" depends upon due observance of the constitutional rights of the accused. 25 Am.Jur., Habeas Corpus, sec. 27, p. 161. See also Palmer v. Ashe, supra.
Conflicting assertions have been made in this proceeding relative to the question of due process, and, in view of the present state of the record, evidence should be received on this issue. Section 5, Article V, of the Constitution of Florida, confers upon this Court the power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and to make such writs returnable before this Court, any justice of this Court, or any circuit judge. Under this section this Court has the power, where the determination of factual questions are necessary to a final decision and judgment, to refer the matter to a circuit judge, as a commissioner of this Court, to make findings and recommendations on the issues tendered by the pleadings. State ex rel. Shropshire v. Mayo, Fla., filed June 22, 1953. (Not to be reported). Compare State ex rel. Landis v. S.H. Kress & Co., 117 Fla. 791, 158 So. 456. This is the procedure that should be followed in the instant case.
Accordingly, it is ordered that this cause be and the same is hereby referred to Honorable C.E. Chillingworth, one of the Judges of the Circuit Court for Palm Beach County, Florida, to take testimony on the issues tendered by the petition in the cause, and to report to this Court his findings of fact and conclusions of law thereon with all convenient speed; and to such end, and for such purposes, the said Circuit Judge is hereby empowered to enter an order requiring the petitioner to be produced before him by the respondent at a time and place specified, and to make such further orders in the matter as shall be meet and proper.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.