Charles RHEA, Petitioner,

v.

James E. EDWARDS, Warden, Defendant.

Civ. No. 1792.

United States District Court
M. D. Tennessee, Nashville Division.

Dec. 13, 1955.

William H. Crabtree, Nashville, Tenn., for petitioner.

Nat Tipton, Asst. Atty. Gen. of Tennessee, for defendant.

DAVIES, District Judge.

This is a habeas corpus action in which petitioner, Charles Rhea, seeks his release from state custody under a sentence of life imprisonment, on the grounds that the Tennessee Habitual Criminal Act as originally enacted, Chapter 22, Public Acts of Tennessee, 1939, Williams' Tenn.Code 1934 (1949 Supp.), §§ 11863.1 to 11863.8, under which he was sentenced, is repugnant to the Constitution of the United States and is, therefore, void.

The defendant insists that petitioner has not exhausted the remedies available to him under the state laws and has not shown facts and circumstances that excuse his failure to do so; therefore, this Court cannot consider his petition for the writ of habeas corpus. This question, being jurisdictional, will be disposed of first.

The undisputed facts are set out in two stipulations filed herein, to which was exhibited certified copies of the technical record of the proceedings had in the Criminal Court for Knox County, Tennessee, and the Supreme Court of Tennessee.

Petitioner was convicted by a jury in the Criminal Court for Knox County, Tennessee, on April 20, 1950, of the offense of armed robbery and sentenced to serve five years in the penitentiary. The

jury further found that "the defendant is an Habitual Criminal, and guilty, as charged, in the indictment." On May 6, 1950, motion for a new trial was overruled, and the petitioner was sentenced to imprisonment for life as an habitual criminal. An appeal was granted petitioner to the Supreme Court of Tennessee. In all of these proceedings, petitioner was represented by counsel appointed by the Court. However, this attorney, believing that he had discharged his duty to the Court and to Rhea, took no further action in the case. Thereupon, Rhea was taken into custody and transported to the Tennessee State Penitentiary at Brushy Mountain, Tennessee, to serve his sentence. Sometime thereafter, while confined in the penitentiary, Rhea wrote his attorney and requested that he go ahead with the appeal, but the attorney did nothing, because the time limit for filing a bill of exceptions had expired. The attorney remembers receiving this letter from Rhea but does not recall answering it. Since he had not participated in the appeal, the attorney was surprised to receive a letter from the Assistant Attorney-General stating that as no bill of exceptions had been filed, the State would move for a dismissal of the appeal. Pursuant thereto, on September 11, 1955, the Supreme Court affirmed the judgment of the trial court.

Petition for certiorari to the Supreme Court of the United States was not filed.

In October of 1950, while confined at the Brushy Mountain penitentiary, petitioner learned from an employee that the Supreme Court of Tennessee had sustained his conviction and sentence. He was not furnished a copy of the judgment of the Supreme Court, and was still under the impression that his court-appointed attorney had taken and would continue to take all necessary steps to protect his rights.

In January, 1951, he was transferred to the Tennessee State Penitentiary at Nashville, where he later learned for the first time that he had not been represented by counsel in his appeal to the Supreme Court of Tennessee. Being without funds to employ counsel, he began to make a personal investigation and study of the remedies available to him. Thereafter, without assistance, he:

(a) Sent a motion to vacate sentence to the Judge of the Criminal Court for Knox County before whom he was tried and sentenced. This motion was not accepted by the Court.

(b) Sent a petition for a writ of habeas corpus to the Circuit Court for Davidson County, Tennessee, at Nashville. This petition was returned by the clerk.

(c) Sent a petition for a writ of habeas corpus to the Criminal Court for Davidson County, Tennessee. The Court appointed counsel to represent him, and, after a hearing, denied the petition. The court-appointed counsel thereupon withdrew from the case because he was of the opinion the petition was without merit.

(d) Attempted to appeal the action of the Criminal Court for Davidson County in dismissing his petition, but learned from the clerk that under the laws of Tennessee he could not perfect an appeal without making a cost bond. Because of his poverty, he was unable to make such a bond and, therefore, unable to perfect an appeal.

(e) Prepared and filed the petition for a writ of habeas corpus in this proceeding.

Whereupon, this Court appointed the Honorable William H. Crabtree, a member of the Nashville Bar, to represent petitioner herein.

The above proceedings were had while Rhea was serving his five-year sentence for armed robbery. Apparently, no question was raised as to the prematurity of his various petitions for habeas corpus attacking the validity of his life sentence, which he had not started serving. He has now completed service of the five-year sentence and is being detained under his sentence as an habitual criminal.

The first question for determination is whether petitioner has complied with the requirements of 28 U.S.C.A. § 2254, as interpreted by the decisions of the Supreme Court, reading as follows:

"§ 2254. State custody; remedies in State courts

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

This Act has been construed by the Supreme Court of the United States in recent decisions, as follows:

"Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." Ex parte Hawk, 321 U.S. 114, 116–117, 64 S.Ct. 448, 450, 88 L.Ed. 572; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 593, 94 L.Ed. 761.

In Darr v. Burford, supra, which seems to be the latest and leading case on the subject and clarifies prior decisions, the Supreme Court said:

"Ex parte Hawk prescribes only what should 'ordinarily' be the proper procedure; all the cited cases from Ex parte Royall [117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868] to Hawk recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case.

The exceptions are few but they exist. * * * Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist 'circumstances rendering such [state] process ineffective to protect the rights of the prisoner'."

In Wade v. Mayo, supra, Wade did not attempt to appeal from his conviction, but proceeded by habeas corpus through the state courts, without success. Thereafter, he filed his petition for a writ of habeas corpus in the District Court of the United States for the Southern District of Florida. The District Court sustained Wade's petition, the Fifth Circuit Court of Appeals, 158 F.2d 614, reversed (on grounds not material herein) and the Supreme Court granted certiorari. 331 U.S. 801, 67 S.Ct. 1529, 91 L.Ed. 1825. After briefs were filed, the Court assigned the case for reargument on two points, one of which was "the propriety of the exercise of jurisdiction by the District Court in this case when it appears of record, in the state's motion for dismissal of the appeal on habeas corpus, that petitioner had not availed himself of the remedy of appeal from his conviction, apparently open after trial though now barred by limitation." [334 U.S. 672, 68 S.Ct. 1273.] On this question, the Court said:

"In our view, it was proper for the District Court to entertain Wade's petition for a writ of habeas corpus and to proceed to a determination of the merits of Wade's constitutional claim. The crucial point is that Wade has exhausted one of the two alternative routes open in the Florida courts for securing an answer to his constitutional objection. * * * The fact that he might have appealed his conviction and made the same claim and received the same answer does not detract from the completeness with which Florida has disposed of his claim on habeas corpus. The exhaustion of but one of several

available alternatives is all that is necessary."

It thus appears to the Court that, although counsel have concentrated their briefs and argument mainly on the effect of Rhea's failure to seek certiorari from the Supreme Court of the United States after the Supreme Court of Tennessee affirmed his conviction and sentence, the most crucial question here is whether Rhea's proceeding by petition for the writ of habeas corpus in the Criminal Court of Davidson County, Tennessee, was an available and appropriate method for having the State of Tennessee decide the issues raised herein; and if so, whether he has exhausted his remedies in that proceeding.

It is well settled in Tennessee that petition for habeas corpus is the proper remedy when the restraint, from which relief is sought, stems from a void judgment. It was so held in the case of State ex rel. Haywood v. Superintendent, Davidson County Workhouse, 195 Tenn. 265, 259 S.W.2d 159, 160, wherein relator filed a petition for a writ of habeas corpus in the Criminal Court of Davidson County, seeking his discharge from custody upon the ground that the order committing him was void. It was alleged that the Act of the Legislature establishing the Juvenile and Domestic Relations Court of Nashville, which imposed the sentence, was unconstitutional. The Criminal Court of Davidson County entered judgment sustaining the petition and discharging relator from custody, and the defendant perfected appeal to the Supreme Court of Tennessee. Two errors were assigned, the first of which was: "The Trial Court erred in permitting the constitutionality of the Juvenile and Domestic Relations Court in Nashville and Article 51 of Chapter 246 of the Private Acts of 1947 to be collaterally attacked in a habeas corpus proceedings as to its constitutionality." The Supreme Court of Tennessee, speaking through Mr. Chief Justice Neil, said:

"There is no merit in the contention that the petition of relator should be dismissed because it is a collateral attack upon the Charter of Nashville. In Lynch v. State ex rel. Killebrew, 179 Tenn. 339, 166 S.W. 2d 397, 398, it is said: 'When the judgment is void, the remedy under it is by habeas corpus. * * * "When the restraint, from which relief is sought by a writ of habeas corpus, proceeds from a judgment erroneous but not void, the writ will not lie. * * * But where the sentence is void, not merely voidable, or the term of imprisonment under it has expired, relief may be had by the writ" '.

"This is not a collateral attack upon the statute, but is a direct attack and is the only remedy available to the relator from a judgment that is wholly void.

"The assignments of error are overruled, and the judgment of the trial court is affirmed."

This principle was recognized by the Supreme Court of Tennessee in the case of State ex rel. Grandstaff v. Gore, 182 Tenn. 94, 184 S.W.2d 366.

Under sections 9674 and 9675 of the Tennessee Code, the Criminal Court of Davidson County, Tennessee, was the appropriate forum for the filing and disposition of Rhea's petition for a writ of habeas corpus.

The Court, therefore, finds that Rhea's petition for habeas corpus in the Criminal Court of Davidson County was an appropriate and available remedy for securing his release from confinement under a void sentence.

From the judgment of the Criminal Court dismissing his petition for habeas corpus, Rhea attempted to appeal. However, section 9716 of the Tennessee Code, which gives any party in a habeas corpus case the right to appeal, requires that the party appealing shall give bond and security for the costs of such appeal. Because of his poverty, Rhea was unable to provide such bond and security, and he was denied an appeal.

This case falls squarely within the principles stated by the Court of Appeals for this Circuit in the case of Dolan v. Alvis, 186 F.2d 586, 587, certiorari denied 342 U.S. 906, 72 S.Ct. 298, 96 L. Ed. 678. The decision is short and to the point. Dolan filed his petition for habeas corpus in the District Court for the Southern District of Ohio, alleging that his conviction in the Court of Common Pleas of Hamilton County, Ohio, was in violation of the Constitution of the United States; that he had exhausted all of his available remedies in the state courts; that "while he had appealed his conviction to the Court of Appeals, and that court had affirmed the conviction, petitioner subsequently filed in the Court of Appeals a notice of appeal to the Ohio Supreme Court, but that he was thereafter denied access to that court"; that he attempted to file numerous petitions for the writ of habeas corpus in the various State courts of competent jurisdiction; and that he was denied access to those courts because the Ohio statute required prepayment of fees in advance upon the filing of such petitions and that he had no funds with which to make such payments, and there was no provision for proceeding in forma pauperis. The respondent filed no answer to the petition, but it was thereafter denied by the District Court and the petitioner granted leave to appeal in forma pauperis. On appeal, respondent's only contention was that appellant (petitioner below) had not exhausted his state court remedies, which provide for appeals to the Court of Appeals and the Supreme Court and for the writ of habeas corpus. The Sixth Circuit Court of Appeals said:

"If a prisoner is without funds or unable to obtain them, and may not present his case on appeal to a state court or file a petition for a writ of of habeas corpus without prepayment of fees that he is unable to make, he would not be precluded from filing a petition for a writ of habeas corpus in a federal court on the ground that he has not exhausted his remedies in the state courts,

for in such a case, he must be held to have exhausted such remedies."

The only difference in that case and the case here is that the Ohio statute required prepayment of docket fees upon the filing of a petition for habeas corpus, and the Tennessee statute requires bond and security for costs upon appeal from a judgment in a habeas corpus case. The principle is the same; when a party cannot proceed in a case without prepayment of docket fees, or giving security for costs, and he is unable to make such prepayment or give such security, he can go no further, and, as stated by the Court in Dolan v. Alvis, supra, "in such a case, he must be held to have exhausted such remedies."

The Court has considered the proposition in defendant's brief that even though petitioner was unable to appeal from the judgment of the Criminal Court of Davidson County dismissing his petition, he still had available the writ of certiorari to review the action of the Criminal Court of Davidson County and that certiorari may issue upon the pauper's oath to review actions in habeas corpus cases was expressly held by the Supreme Court of Tennessee in State ex rel. Karr v. Taxing District, 84 Tenn. 240.

That case, which is the only authority cited by defendant, was decided in 1886 under the statutes then in effect, and, in view of subsequent legislation, is not helpful on this point. The substance of the court's opinion was that, since habeas corpus proceedings had by statute been made matters of record, and since appeals in habeas corpus cases were not provided for, writ of certiorari was available. It was thus summarized on page 247:

"There being no other remedy for the correction of the errors, if any, in the proceedings below in this case, the writ of certiorari would seem to be properly awardable."

Subsequently, legislation was enacted giving the right of appeal in habeas corpus cases, and thereafter, the Court

of Civil Appeals, in the case of Tanksley v. State ex rel. Tanksley, 1 Tenn.Civ. App. 356, 357, thus stated the rule:

> "At common law no appeal was allowed in habeas corpus proceedings—the decision of the trial judge was final. In the case of State ex rel. Karr v. Taxing District, 16 Lea 240 [84 Tenn. 240], it was held that since the Code whereby proceedings in habeas corpus were made a matter of record, a certiorari was a proper remedy for bringing up a habeas corpus case, but that no writ of error, or appeal in error, would lie. By the Act of 1887, Chapter 157, carried into Shannon's Code at Section 5546, the right of appeal in habeas corpus cases is given.".

In the case of State ex rel. Sullivan v. Cocke, 167 Tenn. 253, 68 S.W.2d 933, the Supreme Court of Tennessee held that petition for certiorari was not proper practice where the court dismissed a petition for habeas corpus, since the statute provides for appeal. The Court said:

> "The relator undertakes to bring the case before this court by petition for certiorari. This practice is not authorized, since section 9716 of the Code provides that any party in any habeas corpus case shall have the right of appeal."

■ For these reasons, the Court is of the opinion, and so finds, that petitioner herein has exhausted the remedies available to him in the courts of the State, and that this Court should entertain his petition for the writ of habeas corpus.

■ The Court is further of the opinion that the record shows circumstances that should excuse Rhea's failure to file a petition for certiorari to the Supreme Court of the United States after the affirmance of his conviction by the Supreme Court of Tennessee, and that this failure should not preclude his right to apply to this Court for habeas corpus relief. In view of this holding, it is unnecessary to discuss this point further, other than to point out that after Rhea's

conviction and sentence and while he was incarcerated and wholly dependent upon his court-appointed attorney to protect his legal rights, the attorney abandoned the case entirely, apparently without making any effort to notify the Court, the defendant, or opposing counsel, and permitted to expire any rights that Rhea might have had at that time. It is possible that abandonment of the case by court-appointed counsel without notice to the defendant or permission of the Court, under the circumstances existing in this case, could have the same effect as failure of the Court to appoint counsel.

■ It has long been settled that habitual criminal statutes and statutes providing for increased punishment for subsequent offenders are not unconstitutional as being ex post facto or subjecting a defendant to answer twice for the same offense. However, the question in this case is whether the particular statute under consideration, the Tennessee Habitual Criminal Act, as originally enacted, being Chapter 22, Public Acts of 1939, as interpreted by the Supreme Court of Tennessee, offends the due process clause of the Constitution of the United States, in that it requires a defendant to answer the charge of being an habitual criminal without formal notice in advance of trial.

The Act provides that any person previously convicted three times of any of the offenses specified therein shall, upon conviction a fourth time of any such offense, be pronounced an habitual criminal and upon conviction, shall be sentenced to undergo confinement in the state penitentiary for the remainder of his natural life and shall not be entitled to parole. Under section 6 of the Act, the question of whether the defendant is an habitual criminal is one for the jury to decide. The provisions of the Act objected to as offending the due process clause of the Constitution are as follows:

> "Section 4. Be it further enacted, That, when an habitual criminal, as defined in Section 1 of this Act, is charged, by presentment or indict-

ment, with the commission of any felonies as defined in Sections 10777, 10778, 10788, 10790 and 10797 of the Code of Tennessee, or any other felony, conviction for which will render him infamous under Section 11762 of the Code of Tennessee, or for which the maximum punishment is death, he may also be charged therein with being an habitual criminal, as defined in Section 1 hereof, or may be charged only with the commission of such felony, but in either case, shall upon conviction, be sentenced and punished as an habitual criminal, as in this Act provided.

"Section 5. Be it further enacted, That, an indictment or presentment which charges a person who is an habitual criminal, as defined in Section 1 hereof, with the commission of any felony as defined in Sections 10777, 10778, 10788, 10790, and 10797 of the Code of Tennessee, or any felony, conviction for which will render him infamous, or for which the maximum punishment is death, may or may not also charge that he is such habitual criminal, but in either case the felony charged shall be deemed and construed as necessarily including and charging such person with being an habitual criminal, and no such indictment or presentment shall be subject to any objection for failure to specifically include a charge that such person is an habitual criminal."

■ This Court, in construing the Act, must accept it as it has been construed by the Supreme Court of Tennessee. State of Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744.

■ It can also be said that the administration and interpretation of a statute may render it unconstitutional.

The Supreme Court of Tennessee, as this Court reads its decisions, has construed the Act as providing that:

(a) A defendant may be found guilty and sentenced as an habitual criminal without any actual notice whatever in advance of trial that he is to be tried as an habitual criminal.

(b) The only effect of the Act, so far as practice and procedure are concerned, is to make competent and admissible, evidence that the defendant has been thrice convicted of offenses specified in the Act.

(c) Whether a defendant is an habitual criminal is a question for the jury.

The Act has been construed in three published opinions of the Supreme Court of Tennessee, viz.: McCummings v. State, 175 Tenn. 309, 134 S.W.2d 151; State ex rel. Grandstaff v. Gore, 182 Tenn. 94, 184 S.W.2d 366; and Brown v. State, 186 Tenn. 378, 210 S.W.2d 670. All three of these cases hold that being an habitual criminal is not an independent offense, and the fact of prior conviction is not an element or part of the subsequent offense; that the only effect of the Act is to enhance the punishment for the fourth offense, and therefore, it is not necessary that the indictment contain any allegation in that respect. These are principles that have been discussed, pro and con, in many decisions. However, the question here is not whether the indictment itself must contain such allegations, but whether the defendant is entitled to *any* prior notice in advance of trial, by indictment or otherwise, that he will be prosecuted as an habitual criminal, so that he may have ample opportunity to prepare his defense. As the Court reads the above decisions construing the Act, it is held that the Act itself is sufficient notice to one who falls within its scope that he will be tried as an habitual criminal.

In McCummings v. State, supra, which was the first case in which the Tennessee Supreme Court considered and upheld the constitutionality of the Act, the defendant's first knowledge that he was to be prosecuted under the Habitual Criminal Act came while the jury was being impaneled. The Court thus stated the history of the case [175 Tenn. 309, 134 S.W.2d 152]:

"Defendant was indicted for housebreaking, larceny, and receiving stolen property. The indictment contained no allegation that defendant was an habitual criminal or that he would be tried as such. During the course of selecting a jury the district attorney general announced that the defendant would be tried for housebreaking, and that in addition thereto he would be tried under the Habitual Criminal Law passed by the recent Legislature."

The defendant was convicted and sentenced as an habitual criminal and the Supreme Court of Tennessee affirmed.

The next case in which the Supreme Court of Tennessee construed the Act was State ex rel. Grandstaff v. Gore, supra. This case was on appeal to the Supreme Court from a judgment of the Criminal Court of Davidson County, Tennessee, dismissing a petition for the writ of habeas corpus. Relator insisted, among other things, "* * * that he was deprived of a fair trial in that he was not given notice that he would be prosecuted as an habitual criminal until so short a time before his trial that he had no opportunity to prepare and present his defense to this charge." [182 Tenn. 94, 184 S.W.2d 367.] The Supreme Court refused to consider this question, because (1) such question could not be raised in a habeas corpus proceeding, and (2) relator's petition was premature, in that he was still serving his sentence for housebreaking and larceny and was not at that time being detained under the sentence he sought to attack. Nevertheless, the Court waived these considerations and elected to examine the merits of the defense relator claimed he could have made if he had had an opportunity to do so, found that such defense would not have changed the result of the trial, and affirmed the conviction and sentence.

The last leading case before the Supreme Court of Tennessee on the subject was Brown v. State, supra, 186 Tenn. 378, 210 S.W.2d 670, 675. The third count of the indictment in that case contained a charge under the Habitual Criminal Act, and one of the assignments of error was that there was a fatal variance between the indictment and the proof, in that the indictment charged three convictions " 'under the laws of other states while the proof shows that one of the convictions was under the laws of the United States.' " The Supreme Court rejected this insistence, holding that such variance is not material unless it is prejudicial to the defendant, or if the allegation in the indictment is surplusage; and that under the Act as construed in the McCummings and Grandstaff cases, the allegation in the third count of the indictment was unnecessary in order to find the defendant an habitual criminal and was, therefore, surplusage. The Court went on to say:

"In Tipton v. State, 160 Tenn. 664, 28 S.W.2d 635, 639, it is held that 'the statute itself is notice to the accused and his counsel that proof of a former conviction will be competent, and that he may be required to meet evidence of the fact; that such notice is as effective as a statement of the fact of a former conviction in the indictment itself'. The rulings stated are necessarily predicated upon the fact that 'being an habitual criminal is not made an independent offense'. Its only effect is to increase the punishment to life imprisonment for a fourth offense."

This Court construes these holdings, as summarized in the above paragraph, to mean that the statute itself is all the notice that a defendant is entitled to, because it is as effective as notice by an allegation in the indictment. In this connection, it is noted that the body of the opinion in McCummings v. State, supra, closed with this statement:

"If issue is joined as to prior convictions the accused should be given an opportunity to secure and present his evidence. For that reason, as well as to avoid doing the accused an injustice, the practice of giving him notice in the indictment, or otherwise, as early as possible, so as to

enable him to prepare to meet the charge of being an habitual criminal is commendable."

This statement clearly conforms to the holdings of the Court in the other cases to the effect that notice to the defendant, by indictment or otherwise, though commendable, is unnecessary. Such is the force and effect of the Act.

The theory of the State of Tennessee is that the Act does not create an independent offense, and, therefore, no formal charge is necessary. There are many reported decisions from various jurisdictions in which this theory is discussed at length. However, counsel's citations and the Court's own search reveal few cases that are helpful to decision here, because such decisions, without exception so far as the Court has been able to determine, involve statutes which, in their specific provisions or by judicial construction, provide for some kind of actual notice to the accused in advance of trial, by indictment, presentment, information, or otherwise; whereas, the Act, as construed and applied in Tennessee, specifically provides that such notice to the accused is not required.

The Supreme Court of the United States recently handed down an opinion in the case of Chandler v. Fretag, 348 U. S. 3, 75 S.Ct. 1, 3, in which the Tennessee Act, as construed by the State Courts, is discussed in detail. Although the case was reversed on the ground that the defendant had not been given an opportunity to obtain counsel, the principles expressed therein are applicable here.

The defendant was indicted March 10, 1949, for the offense of housebreaking and larceny. Following his arrest, he was released on bond while awaiting trial set for May 17, 1949. On that day, without an attorney and without notice of any habitual criminal charge against him, he appeared in court intending to plead guilty. When his case was called for trial, he was orally advised by the trial judge that he would also be tried as an habitual criminal because of three alleged prior felonies. He was informed that conviction under the Tennessee Habitual Criminal Act carries a mandatory sentence of life imprisonment with no possibility of parole. He promptly asked for a continuance to enable him to obtain counsel on the habitual criminal accusation. His request was summarily denied by the trial judge, who told him he had had "since January up to May to get a lawyer," and the case proceeded to trial. The defendant entered a plea of guilty to the housebreaking and larceny charge and the prosecution introduced evidence. The jury accepted defendant's plea of guilty to the housebreaking and larceny charge. They further found the defendant to be an habitual criminal. He was sentenced to confinement for three years on the housebreaking and larceny charge, and sentenced to life imprisonment as an habitual criminal. Three years later, having served the three-year sentence, he applied to the Circuit Court of Knox County, Tennessee, for habeas corpus relief, alleging that his sentence as an habitual criminal was invalid, on the ground, among others, that he had been denied an opportunity to employ counsel. The Circuit Court dismissed the petition and, on appeal, the Supreme Court of Tennessee affirmed, both courts holding that the Act does not create a separate offense but only enhances a·defendant's punishment on being convicted of his fourth felony, and that since he had waived his right to counsel on the housebreaking and larceny charge, he had waived any right to counsel on the habitual criminal accusation. The Supreme Court of the United States, in reversing the case, summarized the provisions of the Act and the State decisions, as follows:

"Section 1 of the Act defines 'habitual criminal' in considerable detail. Section 7 prescribes standards for the admissibility of the record of the prior convictions of a defendant charged with being an habitual criminal. This Section, the Tennessee Supreme Court has held, clearly authorizes 'an issue of fact

as to the verity of such record, or as to the identity of the accused with the person named in such record * * *.' Tipton v. State, 160 Tenn. 664, 678, 28 S.W.2d 635, 639. [Under Section 7 of the Act, identity of the defendant with the person named in the record is presumed where the names are the same and there is no proof to the contrary.] Proof of the defendant's prior conviction is '* * * a condition precedent to the imposition of the increased punishment provided.' Tipton v. State, supra. Section 6 of the Act, moreover, provides that the increased punishment cannot be imposed unless the jury specially finds that the defendant is an habitual criminal as charged. 'Under section 6 of the Act', according to the Tennessee Supreme Court, 'the question as to whether the defendant is an habitual criminal is one for the jury to decide.' McCummings v. State, 175 Tenn. 309, 311, 134 S.W.2d 151, 152. In short, even though the Act does not create a separate offense, its applicability to any defendant charged with being an habitual criminal must be determined by a jury in a judicial hearing. Compare Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. That hearing and the trial on the felony charge, although they may be conducted in a single proceeding, are essentially independent of each other. Thus, for example, it is possible that the jury in the instant case might have found petitioner guilty on the housebreaking and larceny charge and yet found him innocent of being an habitual criminal. Apparently recognizing this possibility, petitioner at the earliest possible moment affirmatively sought an opportunity to obtain counsel on the habitual criminal accusation. Immediately on being informed of the accusation and suddenly finding himself in danger of life imprisonment, he requested a continuance so that he could engage the services of an attorney; but the trial court refused the request and forced him to stand immediate trial. On these undisputed facts, it is clear beyond question that petitioner did not waive counsel on the habitual criminal accusation. * * * By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment."

The Supreme Court thus determined that the hearing on an habitual criminal charge is "essentially independent" of the hearing on the felony charged in the indictment; that the defendant, "suddenly finding himself in danger of life imprisonment," had sought, "at the earliest possible moment", an opportunity to obtain counsel on the habitual criminal accusation, and that he had been denied "any opportunity whatever" to do so; and that he had thereby been deprived "of due process of law as guaranteed by the Fourteenth Amendment."

The importance of that decision is the fact that the procedure which was followed by the trial court, and which the Supreme Court finds to be violative of the due process clause of the Fourteenth Amendment, was in strict compliance with the provisions of the Act as construed and applied in Tennessee. Since, under the State court holdings, the Act itself was notice to the defendant that he would be required to meet the habitual criminal charge, and notice just as effective as if the charge had been contained in the indictment, he had had more than two months, during which time he had been at liberty on bail, within which to employ counsel. Thereafter, it was discretionary with the trial court as to whether or not he should be allowed additional time for that purpose. (It is to be noted that the defendant did not request the Court to appoint counsel for him; he asked for a continuance so he could have an opportunity to employ his own counsel.) The trial court, in the ex-

ercise of its discretion, declined to grant the request for a continuance, on the grounds that the defendant had had "since January up to May to get a lawyer."

It may be assumed that if the indictment in that case had actually charged the defendant with being an habitual criminal, and if the defendant had thereafter been at liberty (which was the case) for more than two months awaiting trial, the Supreme Court would not have found that the defendant had been denied "any opportunity whatever to obtain counsel on the habitual criminal accusation," for in that case he would have had two months' time within which he could have employed counsel.

Thus, in this Court's opinion, the Supreme Court of the United States rejects the theory that the defendant is not entitled to actual notice in advance of trial, and it further rejects the theory that the Act itself constitutes such notice.

The Tennessee statute, its interpretation, and its application all combine to make it unique. Its purpose is thus stated by the Supreme Court of Tennessee:

"Relator presents a typical illustration of those unfortunate moral derelicts who exhibit an 'indifference to the laws which keep society together.' * * * This legislation has been widely enacted to remove from society a class of confirmed criminals whose depredations have proven to be limited only by their opportunities." State ex rel. Grandstaff v. Gore, supra [182 Tenn. 94, 184 S.W.2d 368].

"Such a criminal is a menace to society and should be confined to prevent the committal of other, and probably more serious, crimes." McCummings v. State, supra [175 Tenn. 309, 134 S.W.2d 152].

It is, therefore, clear that the fundamental purpose of the Act in question is not to impose punishment for an offense against the State, for being an habitual criminal is not an offense, Brown v. State, supra; nor is its purpose to accomplish the rehabilitation of the offender, or to deter others who might be tempted to commit like offenses. Its purpose is to permanently remove from society individuals who have proved themselves to be a public menace. Much has been written in the decisions on the various constitutional questions that arise from such statutes. However, the facts here are that the Act, as construed and applied in Tennessee, provides (1) that for the purpose of permanently removing a person from society because he is an habitual criminal, the person may be put to trial before a jury on factual issues, in a judicial hearing essentially independent of the trial on the substantive charge, where an adverse verdict will mandatorily commit him to life imprisonment without any possibility of parole or commutation of sentence, and (2) that the person so charged is not entitled to any notice in advance of the trial, by indictment or otherwise, that he is to be so tried.

The fundamental requirements of "due process of law" are (1) notice to the accused and (2) a fair hearing. The Act under consideration, as construed and applied, does not, in this Court's opinion, meet the first fundamental requirement, in that it denies the accused his right to notice to the accusation against him. The Court feels that such notice is not only "commendable," but is necessary in order to constitute due process of law under the Fourteenth Amendment.

The Act is not saved by the presumption that the courts will administer the law in a judicious manner, so as to protect the rights of defendants, for the Supreme Court of Tennessee has construed the Act as specifically providing for and authorizing the procedure which is herein found to contravene the due process clause.

The Tennessee legislature apparently recognized the deficiency in the Act, for, in the Tennessee Code, 1932, (1950 Supp.), effective Jan. 1, 1952, Section

11863.5, the Act was modified to require the inclusion of the habitual criminal accusation in the indictment on the substantive offense.

For these reasons, the Court holds that the Act in question contravenes the due process clause of the Fourteenth Amendment to the Constitution of the United States and is, therefore, void; that the petitioner is being illegally restrained by defendant; and that the petition for the writ of habeas corpus should be sustained and the petitioner released from custody.

Judgment will be entered accordingly.